WILLIAM B. HOWELL AND FAY S. HOWELL, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1538–70, 1546–70, 1596–70, 1597–70. Filed January 31, 1972.

---

[1] Proceedings of the following petitioners are consolidated herewith: George E. Chase and Jan P. Chase, docket No. 1546–70; Allen S. Hardin and Katharine C. Hardin, docket No. 1596–70; and Hectare, Inc., docket No. 1597–70.

*Tom Watson Brown* and *Samuel F. Doster, Jr.*, for the petitioners.
*James D. Burroughs*, for the respondent.

STERRETT, *Judge:* Respondent determined deficiencies in petitioners' income taxes for the years and in the amounts as follows:

| Docket No. | Petitioners | Taxable year | Deficiency |
|---|---|---|---|
| 1538–70 | William B. Howell and Fay S. Howell | 1965 | $2, 984. 66 |
| | | 1966 | 17, 377. 75 |
| 1546–70 | George E. Chase and Jan P. Chase | 1965 | 919. 20 |
| | | 1966 | 5, 603. 26 |
| 1596–70 | Allen S. Hardin and Katharine C. Hardin | 1965 | 1, 395. 04 |
| | | 1966 | 9, 171. 00 |
| 1597–70 | Hectare, Inc | 1965 | 3, 684. 92 |
| | | 1966 | 65, 381. 16 |

The issues for decision are:

(1) Whether certain real property, which constituted the only property held by Hectare, Inc., and was sold by it during 1964, 1965, and 1966, was a capital asset within the meaning of section 1221, I.R.C. 1954,[2] or whether such property was held by the corporation primarily for sale to customers in the ordinary course of the corporate trade or business.

(2) Whether Hectare, Inc., was entitled to the small business corporation election provided for under section 1372.

(3) Whether respondent properly determined that distributions the stockholders of Hectare, Inc., received from that corporation constituted ordinary income to the stockholders and not long-term capital gain.

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

William B. and Fay S. Howell (husband and wife), George E. and Jan P. Chase (husband and wife), and Allen S. and Katharine C. Hardin (husband and wife), all resided in Atlanta, Ga., at the time their petitions in this case were filed. Each of the petitioner couples filed joint Federal income tax returns for the taxable years 1965 and 1966 with the district director of internal revenue, Atlanta, Ga.

Hectare, Inc. (Hectare), is a corporation organized under the laws of the State of Georgia on November 9, 1961, with its principal place of business at the time of the filing of its petition in this case in Atlanta, Ga. It filed Forms 1120–S, U.S. small business corporation income tax returns, for the years 1965 and 1966 with the district director of internal revenue at Atlanta, Ga.

In 1961 a real estate agent by the name of Robert Hughes (Hughes) approached William B. Howell (Howell) with respect to the purchase

---

[2] All references are to the Internal Revenue Code of 1954 unless otherwise indicated.

of certain property owned by heirs of the estate of W. A. Montgomery (hereinafter referred to as the Montgomery property). Howell was employed as a real estate agent in the same firm in which Hughes was employed. Howell was a longtime friend of Allen S. Hardin (Hardin) who was engaged in the general contracting business as an officer and project manager of Ira H. Hardin Co. This company was engaged in building commercial and industrial buildings. Howell talked with Hardin concerning the acquisition of the Montgomery property.

Hughes, Howell, and Hardin decided to purchase the Montgomery property and agreed they would form a corporation and have the corporation acquire the land. They formed Hectare which had a total of 120 shares of stock with Hardin, Howell's wife, Fay, and Hughes each owning 40 shares. Subsequently, Hughes sold 20 of his shares to Jan P. Chase and the other 20 shares to Ray H. Fechtel. During the taxable years 1965 and 1966 Hectare's stock was owned as follows:

| Stockholder | Number of shares |
|---|---|
| Allen S. Hardin | 40 |
| Fay S. Howell | 40 |
| Jan P. Chase | 20 |
| Ray H. Fechtel | 20 |

The charter of Hectare states:

The object of said proposed corporation is pecuniary gain and profit to the stockholders. The general nature of the business which they wish to carry on is to engage in a general investment business, investing in both real and personal property as well as other general investments.

On January 23, 1962, Hectare acquired the Montgomery property which consisted of 42.86 acres of unimproved land located along the corner of and bordering on Oakcliff Road and Pleasantdale Road in DeKalb County, Ga. One hundred and eight thousand, six hundred and forty-two dollars of the purchase price was by a note given to the Montgomery heirs secured by a warranty deed to secure debt. This warranty deed contained provisions for release of acreage on the payment of $3,500 or $4,000 per acre depending upon its location within the tract. The Montgomery property was located contiguous to and across the street from land being developed by Atlanta DeKalb Industrial Park, Inc., a corporation of which Ira H. Hardin was president. This development which commenced in 1960 was for office and warehouse use.

Hardin was president of Hectare and Howell was vice president. In 1964 it was decided that Hectare would borrow $110,000 from the First National Bank of Atlanta to pay the sum owing to the Montgomery heirs. Arrangements for this loan were made on behalf of Hectare by Howell. The First National Bank of Atlanta was represented in the loan negotiations by Arthur H. Huber (Huber) who at

the time was vice president and loan officer. Howell and Huber were personal friends and Huber was aware of the personal net worth of the Howells, the Hardins, and the Chases. Howell told Huber that the land had been purchased for resale. Although the property was vacant land, Huber was of the opinion that it could be considered as improved property under banking regulations since it was bordered by improved roads, had utility lines contiguous to it, and had a sewer running through it. The bank made the $110,000 loan to Hectare on March 24, 1964, and the note to the bank was personally endorsed by Hardin, Howell, and Jan D. Chase.

On December 30, 1964, Hectare sold 0.9 acre of the Montgomery property to Cobb Enterprises, Inc., and at the same time Atlanta DeKalb Industrial Park conveyed 0.29 acre of adjacent land to Cobb Enterprises, Inc., by the same warranty deed. On May 6, 1965, Howell, in a conversation with Huber, told Huber of the sale of the 0.9 acre and informed Huber that a number of prospective buyers had been looking at the Hectare property and that the offering price had been increased to $12,000 per acre.

On December 15, 1965, Hectare sold 2.2 acres of the Montgomery property to William T. Newman. Newman is a general contractor and a personal friend of Howell.

On January 14, 1966, Hectare sold the remaining 39.74 acres of the Montgomery property to Pleasantdale Corp. Pleasantdale Corp. was controlled by an individual who was a friend of Howell. The sale to Pleasantdale Corp. was arranged by John Maddox, a real estate agent. Maddox approached the officers of Hectare with respect to the purchase of the property as had the purchasers of the 0.9 acre and the 2.2 acres. However, Hectare paid John Maddox a commission on the sale of the 39.74 acres since such a commission was customary under the circumstances.

Newman constructed two buildings on the 2.2 acres which he purchased from Hectare, and Pleasantdale Corp. developed the property which it purchased.

Hectare held stockholders and directors meetings, filed its annual State registration forms and its State and Federal income tax returns, and declared and paid ad valorem taxes on the Montgomery property. It never received any rent or other income from use of the Montgomery tract during the time it owned the property. None of the individual stockholders of Hectare nor any of their spouses have ever participated together in any real estate investment ventures, except for their investment in Hectare, either before, during, or after the formation of Hectare. None of the stockholders of Hectare had been extensively engaged in dealing for his own account in real estate as distinguished

from acting as a real estate agent or broker prior to or after the formation of Hectare, either individually or as a joint venturer. Hardin had at one time participated in a group that developed a shopping center and in 1969 or 1970 was involved in several joint venture developments. Howell was a joint venturer in a tract of real property with respect to which he reported a gain of $2,060.45 on his 1965 income tax return. Most of Howell's income was from dividends and interest, only between 15 and 20 percent of the income he reported being from his activities as a real estate agent or broker. No stockholder of Hectare at any time made any personal use of the Montgomery tract for any purpose.

Hectare at no time subdivided the Montgomery tract or made any improvements on the property or took any steps toward developing the property. Hectare did not advertise the property for sale, but its stockholders understood that the objective of Hectare was to sell the Montgomery tract at a profit. The only business that Hectare ever engaged in was selling the Montgomery property. Hectare has been inactive since the sale of the Montgomery property. The stockholders of Hectare had no common interest in participating in other projects, primarily because the other shareholders found it difficult to communicate with Ray H. Fechtel and decided that they would cease doing business through Hectare. After the sale of the Montgomery property, the other stockholders of Hectare attempted to have Hectare obtain Fechtel's stock. Since they were unable to have Hectare obtain Fechtel's stock, they made no plans to continue in any investments through the corporation or otherwise.

On January 31, 1964, Hectare filed an election to be taxed as a small business corporation under subchapter S of the Internal Revenue Code of 1954. At all times during the existence of Hectare it has had less than 10 stockholders, all of whom have been individuals and it has never had more than one class of stock.

Hectare, on its U.S. small business corporation income tax returns, Form 1120–S, for 1965 and 1966, reported income, expenses, and net income as follows:

| Income: | | 1965 | 1966 |
|---|---|---|---|
| Net long-term capital gain reduced by any net short-term capital loss | | $24, 514. 50 | $150, 834. 75 |

| Deductions: | 1965 | 1966 | | |
|---|---|---|---|---|
| Taxes | $894. 65 | $10. 60 | | |
| Interest | 6, 617. 12 | 810. 13 | | |
| Organization expense | 52. 00 | 52. 00 | | |
| Other deductions | 202. 44 | 209. 55 | | |
| Total deductions | | | 7, 766. 21 | 1, 082. 28 |
| Net income | | | 16, 748. 29 | 149, 752. 47 |

The other deductions consisted of accounting fees of $100 in 1965 and $70 in 1966, insurance of $84 in 1965 and a credit of $30 on insurance in 1966, office expense of $18.44 in 1965 and $1.42 in 1966, and an engineering expense of $168.13 in 1966.

On its returns for 1965 and 1966 Hectare reported that none of its stockholders devoted any time to its business or received any compensation and reported stock ownership and distributions to them as follows:

| Stockholder | Number of shares | Distribution of income | | | | | |
|---|---|---|---|---|---|---|---|
| | | Dividends | | Share of net long-term capital gain | Amount taxable as ordinary income | Nondividend distributions | |
| | | Date | Amount | | | Date | Amount |
| *1965* | | | | | | | |
| Mrs. W. B. Howell | 40 | 12/65 | $5,582.76 | $8,171.50 | ($2,588.74) | 12/65 | $2,417.24 |
| Allen Hardin | 40 | 12/65 | 5,582.76 | 8,171.50 | (2,588.74) | 12/65 | 2,417.24 |
| Mrs. G. P. Chase | 20 | 12/65 | 2,791.38 | 4,085.75 | (1,294.37) | 12/65 | 1,208.62 |
| Ray H. Fechtel | 20 | 12/65 | 2,791.39 | 4,085.75 | (1,294.36) | 12/65 | 1,208.61 |
| *1966* | | | | | | | |
| Mrs. W. B. Howell | 40 | 1/66 | 49,917.49 | 50,278.25 | (360.76) | 1/66 | 2,082.51 |
| Allen Hardin | 40 | 1/66 | 49,917.49 | 50,278.25 | (360.76) | 1/66 | 2,082.51 |
| Mrs. G. P. Chase | 20 | 1/66 | 24,958.75 | 25,139.13 | (180.38) | 1/66 | 1,041.25 |
| Ray H. Fechtel | 20 | 1/66 | 24,958.74 | 25,139.12 | (180.38) | 1/66 | 1,041.26 |

William B. and Fay S. Howell on their joint Federal income tax return for 1965 reported an ordinary loss of $2,588.74 and a long-term capital gain of $8,171.50 from Hectare, and on the joint return for 1966 reported an ordinary loss of $360.76 and a long-term capital gain of $50,278.25 from Hectare.

George E. and Jan P. Chase on their joint Federal income tax return for 1965 reported an ordinary loss of $1,294.37 and a long-term capital gain of $4,085.75 from Hectare, and on their joint return for 1966 reported an ordinary loss of $180.38 and a long-term capital gain of $25,139.13 from Hectare.

Allen S. and Katharine C. Hardin on their joint Federal income tax return for 1965 reported an ordinary loss of $2,589 and a long-term capital gain of $8,171 from Hectare, and on their joint return for 1966 reported an ordinary loss of $361 and a long-term capital gain of $50,278 from Hectare.

Respondent in his notice of deficiency to Hectare explained his determination of deficiencies as follows:

It is determined that you are not entitled to the election under section 1372, subchapter S, 1954 Code for the taxable year ended December 31, 1965 and 1966, because you were not engaged in a trade or business. Further, it is determined that you realized ordinary income from the sale of real estate, rather than long-term capital gain, and therefore you are not entitled to the alternative tax computation provided under section 1201 of the Internal Revenue Code. Accordingly, taxable income as shown on Forms 1120-S for 1965 and 1966 is subject to the tax under section 11 of the Code.

In his notice of deficiency to William B. and Fay S. Howell, respondent determined that they received dividends from Hectare in the amount of $5,582.76 for 1965 and $49,917.49 for 1966 and were not entitled to the ordinary loss claimed from Hectare of $2,588.74 in 1965 and $360.76 in 1966, thereby increasing their reported taxable income by $8,171.50 and $50,278.25 in 1965 and 1966, respectively.

Respondent in his notice of deficiency to the Chases and in his notice of deficiency to the Hardins made adjustments exactly as those made in his notice to the Howells except the figures used were those applicable to the receipts by the particular taxpayers from Hectare and the ordinary-loss deduction claimed by those taxpayers.

### OPINION

The case at bar presents for our determination three issues, the first of which relates to whether property sold by Hectare was a capital asset within the meaning of section 1221, or whether such property was held by the corporation primarily for sale to customers in the ordinary course of the corporate trade or business. Section 1221 states in part:

SEC. 1221. CAPITAL ASSET DEFINED.

For the purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

(1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;

Restating the basic facts briefly Hughes approached Howell in 1961 with respect to the purchase of certain property being sold by the heirs of the estate of W. A. Montgomery. Hughes, Howell, and one Hardin decided to acquire the property and agreed to form a corporation and have the corporation purchase the land. In accordance with their agreement Hectare was incorporated, and on January 23, 1962, acquired the Montgomery property which consisted of 42.86 acres of land. Hectare had no other assets and never received any rent or other income from the property. On January 31, 1964, Hectare filed an election to be taxed as a small business corporation. On December 30, 1964, Hectare sold 0.9 acre of the property. This was followed by a sale of 2.2 acres on December 15, 1965. Finally on January 14, 1966, Hectare sold the remaining 39.74 acres of property. The gain recognized on the three sales was reported as long-term capital gain by the shareholders pursuant to their election to have Hectare taxed as a subchapter S corporation.

Preliminarily, we point out that respondent has not questioned the validity of the corporation structure. Rather, both parties agree that Hectare was a viable corporation. Such an understanding is appropriate in light of the Supreme Court's determination in *Moline Properties, Inc.* v. *Commissioner*, 319 U.S. 436 (1943).

As we understand the principal thrust of respondent's present position it is that, since the holding and subsequent sale of the real property was the only activity engaged in by Hectare, such sole activity must have resulted in the receipt of ordinary income. Or to state the proposition in the negative, a corporation cannot have as its sole activity an investment activity which qualifies its only income as capital gain even though in another setting this same income might be so treated.

We cannot accept this contention. There is nothing unique or improper about a corporation engaging in exclusively investment activity. We can find no basis in the Code, the regulations thereunder, the decided cases, or the generally accepted concepts of tax law for requiring that every corporation must have some "ordinary income" activity. Further, we find no need here to ignore the recognized precepts of corporate law, with respect to corporate viability, to maintain the integrity of the Internal Revenue Code.

The limited authority that exists on this novel question supports this conclusion. The language in section 1221 itself, the section which creates the distinction here involved, makes reference to "property held by the *taxpayer*." Section 7701 defines taxpayer to include individuals and corporations. Therefore, it is clear that a corporation may hold a capital asset, and there would seem to be no justification for holding otherwise merely because such property is the corporation's only asset. In making the initial determination whether the property is a capital asset, logic requires that the property be subjected to the same tests applied to an individual.[3]

In further support of this position we note that in *512 W. Fifty-sixth St. Corp.* v. *Commissioner*, 151 F. 2d 942 (C.A. 2, 1945), affirming a Memorandum Opinion of this Court, the *only* property owned by the taxpayer corporation had been bought for sale, was continually

---

[3] Respondent, appropriately, does not contend that a corporation cannot hold property for investment. In *Graves Brothers Co.*, 17 T.C. 1499, 1506 (1952), this Court stated, "It is easily conceivable that a corporation might acquire real property for uses other than in its trade or business." And more recently in *Maddux Construction Co.*, 54 T.C. 1278, 1287 (1970), this forum pointed out that, "We cannot conclude from the record before us that the profit realized by petitioner on this one isolated transaction represents 'profits * * * arising from the everyday operation of a [petitioner's] business.' Instead we believe the profit * * * represented 'the realization of appreciation in value accrued over a substantial period of time' while petitioner held the property." The Court concluded that the gain was taxable as capital gain.

held for that purpose, and was its sole business.[4] The Second Circuit held that the sale of property was a capital loss. It stated:

> Hence we are to judge whether the taxpayer was engaged in any business by its own activities * * *. So judged, there can be not the least doubt that it had no "business," as * * * [sec. 1221(a)(1)] uses the word. It never held in all more than the two parcels we have mentioned and that which was foreclosed. Whatever the reason, the disposition of the two hung fire for years: the first parcel for twenty years; the second, for thirteen. Indeed, the Tax Court was altogether justified in concluding that the first parcel was not held "primarily for sale" at all. *If so, the putative "business" consisted in acquiring, and after long delay, in selling one parcel of property * * *. Much more continuous activity in buying and selling is necessary to constitute a "business."* * * * [Emphasis supplied. 151 F. 2d at 944.]

More recently in *Morris Cohen*, 39 T.C. 886 (1963), petitioners were interested in acquiring land for investment. They formed DOM Corporation to hold the property. Though the issue presented dealt with the applicability of the collapsible corporation provisions, this Court pointed out that "The very limited activities of * * * DOM * * * did not put [it] * * * in the real estate business."

We believe the foregoing authorities support our conclusion that a corporation may hold, as its only property, investment assets.

Having made that determination, we must proceed to an analysis of whether the real property at hand was held primarily for sale to customers in the ordinary course of such business or held for investment purposes. This poses a pure question of fact. *W. T. Thrift, Sr.*, 15 T.C. 366 (1950). Faced with this question on innumerable occasions, the courts have adopted several well-recognized tests. These tests include: (1) The purpose for which the asset was acquired; (2) the frequency, continuity, and size of the sales; (3) the activities of the seller in the improvement and disposition of the property; (4) the extent of improvements made to the property; (5) the proximity of sale to purchase; and (6) the purpose for which the property was held during the taxable years. *Robert W. Pointer*, 48 T.C. 906 (1967), affd. 419 F. 2d 213 (C.A. 9, 1969); *James G. Hoover*, 32 T.C. 618 (1959).

We are of the opinion that Hectare was engaged solely in investment activities in acquiring and selling the real estate. In support of this conclusion we note that the property in question was acquired in January of 1962 and was not completely disposed of until January of 1966, 4 years later. There were a total of three sales, with the first two being merely incidental to the final sale which disposed of over 90 percent of the initial tract of land. The real estate was unimproved and

---

[4] The Second Circuit points out that the corporation's only income consisted of rents from the parcels of land. However they note that "All three parcels—the only property owned by the taxpayer—had been bought for sale and were continually held for that purpose, and it had no other business." (151 F. 2d at 943.)

Hectare made no attempt to improve or subdivide it. The property was not advertised for sale; the officers of Hectare were approached with respect to the purchase of the real estate.

We note that, though the property may have been acquired with the ultimate intention of reselling, this does not result in a determination that the property was held primarily for sale in the ordinary course of business. Rather, as the Fifth Circuit noted in *Dunlap* v. *Oldham Lumber Co.*, 178 F. 2d 781, 785 (C.A. 5, 1950), property must not only have been "held primarily for sale," but also for sale in the "ordinary course of business." See also *United States* v. *Winthrop*, 417 F. 2d 905 (C.A. 5, 1969); *Wellesley A. Ayling*, 32 T.C. 704 (1959). As noted above, the facts indicate that the property was held for investment. In further support of this conclusion we point to the Supreme Court's opinion in *Malat* v. *Riddell*, 383 U.S. 569, 572 (1966), wherein it was stated:

> The purpose of the statutory provision with which we deal is to differentiate between the "profits and losses arising from the everyday operation of a business" on the one hand (*Corn Products Co.* v. *Commissioner*, 350 U.S. 46, 52) and "the realization of appreciation in value accrued over a substantial period of time" on the other. (*Commissioner* v. *Gillette Motor Co.*, 364 U.S. 130, 134.) A literal reading of the statute is consistent with this legislative purpose. We hold that, as used in section 1221 (1), "primarily" means "of first importance" or "principally."

It is manifest that the profit arising in the instant transaction was the realization of appreciation in value accruing over a period of time; and the fact that such appreciation was anticipated and was the *raison d'être* for the purchase does not serve to alter this basic fact.

Upon an examination of the entire record we conclude that Hectare was engaged in investment activities in acquiring and selling the real estate.

The second issue requires us to determine whether Hectare was entitled to the small business corporation election provided for within section 1372.

Section 1371 defines small business corporation as a domestic corporation which has satisfied certain specific requirements.[5] We have already pointed out that Hectare was a viable corporation and, re-

---

[5] SEC. 1371. DEFINITIONS.

(a) SMALL BUSINESS CORPORATION.—For purposes of this subchapter, the term "small business corporation" means a domestic corporation which is not a member of an affiliated group (as defined in section 1504) and which does not—

    (1) have more than 10 shareholders;

    (2) have as a shareholder a person (other than an estate) who is not an individual;

    (3) have a nonresident alien as a shareholder; and

    (4) have more than one class of stock.

(b) ELECTING SMALL BUSINESS CORPORATION.—For purposes of this subchapter, the term "electing small business corporation" means, with respect to any taxable year, a small business corporation which has made an election under section 1372(a) which, under section 1372, is in effect for such taxable year.

spondent concedes that the 1371 requirements have *been* complied with. Therefore, it is apparent to this Court that Hectare was a viable small business corporation.

Respondent contends however, that if we determined Hectare to have been holding the Montgomery property for investment then Hectare cannot be a small business corporation as it has no active trade or business. In support of this assertion respondent relies on the legislative history of section 1378 which states in part:

When the "passthrough" type of tax treatment was provided for corporations, Congress decided to limit the availability of this treatment to small businesses actively engaged in trades or businesses. Therefore, it denied this treatment to corporations with large amounts of passive income. [S. Rept. No. 1007, 89th Cong., 2d Sess. 1966–1 C.B. 532.]

Respondent's reliance is misplaced. The main import of the quoted language was to exclude from the small business corporation provisions, corporations with large amounts of passive income; which was defined by Congress to include royalties, rents, dividends, interests, annuities, and gross receipts from the sale of stock or securities. See section 1372(e)(5) as it read during the years before the Court. Since Hectare's only income was received from the sale of real estate, it had no passive investment income and therefore was not prohibited from electing to be taxed as a small business corporation.

We also note that respondent's reliance on *DuPont* v. *United States*, 234 F. Supp. 681 (D. Del. 1964), is also inappropriate. The court in *DuPont* was concerned with whether the corporation in question was operated with the intention of making a profit or merely incorporated as a hobby. It stated:

Generally understood, a "business" corporation is one which is operated for purposes of making a profit. A more detailed analysis of the Code substantiates the conclusion that Subchapter S was intended to apply to corporations whose aim is to make money. [234 F. Supp. at 683.]

Clearly Hectare was attempting to make a profit and thereby was a business corporation.

Further we point out that respondent's own regulations, at 1.1375–1 (d), demonstrate that the Commissioner contemplated a situation wherein a subchapter S corporation would be availed of merely to sell property and this regulation does not attempt to avoid such an election.[6] We therefore conclude that Hectare was a valid small business

---

[6] The regulations at sec. 1.1375–1(d) state in part:

Sec. 1.1375–1(d). *Level for determining character of gain.* Ordinarily, for purposes of determining whether gain on the sale or exchange of an asset by an electing small business corporation is capital gain, the character of the asset is determined at the corporate level. However, if an electing small business corporation is availed of by any shareholder or group of shareholders owning a substantial portion of the stock of such corporation for the purpose of selling property which in the hands of such shareholder or shareholders would not have been an asset, gain from the sale of which would be capital gain, then the gain on the sale of such property by the corporation shall not be treated as capital gain. * * *

corporation, and the gain realized on the sale of the property is passed through to the shareholders.[7]

Finally we note that, though we have determined the Montgomery real estate to have been acquired by Hectare for investment, the regulations at sec. 1.1375–1(d) require, in addition, that a determination be made with respect to the character of the property in the hands of the shareholder, for if the property is held not to be a capital asset in his hands, then the gain is to be treated as ordinary income.[8]

Specifically without passing on the validity of this regulation we note that, though one of the shareholders was a real estate broker, this does not necessitate a determination that he was in the business of buying and selling property. Rather, he was an agent whose job it was to obtain buyers for property. However, even if it is determined that he was in the business of buying and selling property that does not require a finding that the Montgomery property was so held. It is established that a person may be both a dealer and an investor. *Real Estate Corporation*, 35 T.C. 610 (1961), affd. 301 F. 2d 423 (C.A. 10, 1962); *Charles B. Mieg*, 32 T.C. 1314 (1959). As noted above, the facts indicate that the property was not sold for 4 years. Further, no attempt was made to subdivide, improve, or sell the property. Clearly the intent of the shareholders was to hold the property for investment. Therefore, assuming arguendo that the regulation is valid, we find on the facts presented that the real estate would have been a capital asset in the hands of the shareholders thereby requiring the gain realized by Hectare on the sale of the property to be taxed as capital gain at the shareholder level.

Reviewed by the Court.

*Decisions will be entered for the petitioners.*

---

Scott, *J.*, dissenting: I respectfully disagree with the majority opinion, both in its conclusion that Hectare was not engaged in the trade or business of selling real property during the years here in issue and the conclusion that a corporation not engaged in an ordinary trade or business can elect to be "a small business corporation."

While neither party argues that Hectare was not a viable corporation, I interpret respondent's argument to rely heavily on the proposition that in order to be a viable corporation for Federal income tax purposes, the corporation must be engaged in a business activity or carrying on a trade or business. In fact, respondent quotes from and relies on the statement of the Court in *Moline Properties* v. *Commissioner*, 319 U.S. 436 (1943), that the separate entity of a corporation

---

[7] We note in passing that due to its effective date sec. 1378 is not applicable to the instant cases.

[8] Sec. 1.1375–1(d) *supra*.

will not be overlooked whether its purpose be to gain an advantage under State law, to avoid or comply with the demands of creditors, or "to serve the creator's personal or undisclosed convenience so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation." At no point, as I understand respondent's argument, does he contend that a corporation "cannot have as its sole activity an investment activity which qualifies its only income as capital gain."

Certainly, it is too obvious to require citation that a corporation can be a legal entity under the law of the State in which it is created even though it is dormant if the State law so permits. Likewise, a corporation can have as its sole activity an investment activity, which under the law of the State in which it is created, would be its business. Whether such activity would constitute the carrying on of a trade or business within the concept of the income tax laws depends on the nature of the activities of the corporation. See *John A. Mulligan*, 16 T.C. 1489, 1492 (1951), in which we quoted, with approval, the statement in *Estate of L. B. Whitfield*, 14 T.C. 776, 782 (1950), affd. 192 F. 2d 494 (C.A. 5, 1951), that if a corporation "had no purpose other than to hold bare title, [to real estate] and did not engage in business, * * * the case would fall within a recognized exception to the general rule," that a corporation is a separate taxpayer from its stockholders. If Hectare was not engaged in the business of selling the Montgomery property, then it had no business and we would have to consider the Montgomery property as being held by it purely as a nominee of its shareholders. Since Hectare had no investment "business" unless its purchase and sale of the Montgomery property is such a "business," I see no need to speculate as an abstract matter on whether a corporation can "have as its sole activity an investment activity which qualifies its only income as capital gain." Hectare purchased property and sold it. The purchase and holding of real estate for sale to customers by a corporation has generally been recognized as the type of activity which constitutes the carrying on of a trade or business by that corporation. Even if the majority is calling the purchase and sale of this property an "investment" business of Hectare, it follows that this "investment" business is Hectare's trade or business and since the Montgomery property was held for sale in the course of that "investment" business, it was not a capital asset in Hectare's hands under section 1221(1).

None of the cases cited in the majority opinion, nor any to which my attention has been directed, in any way has held that a corporation was an entity taxable for Federal income tax purposes where its sole activity was holding for resale as a capital asset a piece of real property. Where the corporation has sold the property, as did Hectare, this

activity has been considered as the carrying on of the business of selling property by the corporation.

The case of *512 W. Fifty-Sixth St. Corp.* v. *Commissioner*, 151 F. 2d 942 (C.A. 2, 1945), affirming a Memorandum Opinion of this Court, relied on in the majority opinion, involved a corporation organized in 1918 which leased a parcel of real property for 21 years, constructed a garage on that property, and sublet the parcel "at substantial profit until the term" of the lease expired in 1939. The Court specifically pointed out that between the years 1918 and 1939 the taxpayer's income consisted of rents derived from the first and second parcels and from a third parcel which it later lost by foreclosure. While the Second Circuit did make the statement, "all three parcels—the only property owned by the taxpayer—had been bought for sale and were continually held for that purpose, and it had no other business," it is clear from the case as a whole that the Court in fact did recognize that the corporation had for 21 years been engaged in the business of subletting its property. In the quotation used in the majority opinion, the Second Circuit said, "Indeed, the Tax Court was altogether justified in concluding that the first parcel was not held 'primarily for sale' at all." Read in full context, the holding in *512 W. Fifty-Sixth St. Corp.* v. *Commissioner, supra,* is merely that a corporation which is engaged in a business operation may hold a piece of real estate for investment purposes and may sell that real estate and receive capital gain where the evidence shows that the real estate is not held for sale to customers in the ordinary course of the corporate trade or business.

The case of *Morris Cohen,* 39 T.C. 886 (1963), does not deal with a corporation which sold any real property. That case concerned the nature of gain by the taxpayer on the sale of his stock in the corporation, DOM. The Government was contending that DOM was engaged in the business of selling real estate in the years in issue even though it had made no sales. This Court stated: "The evidence shows that there was no such business ever carried on * * * by * * * DOM (*while its stock was owned by petitioners*)." (Emphasis supplied.) This Court again stated: "The very limited activities * * * of DOM while the petitioners owned its stock did not put [it] * * * in the real estate business." It is clear that in the *Morris Cohen* case, we made no decision on whether DOM would have been engaged in the real estate business had it sold the property it was holding prior to the sale by the taxpayer of his stock in DOM.

Neither of the two cases noted in footnote 3 of the majority opinion deals with a corporation whose only activity was the acquisition and holding for resale of one piece of real property. *Graves Brothers Co.,* 17 T.C. 1499 (1952), dealt with a corporation which originally carried on an extensive sawmill and planing mill operation and later a farm-

560

ing operation. That case merely stands for the proposition that a corporation engaged in one business may acquire a piece of real property "for uses other than in its trade or business," presumably as an investment. *Maddux Construction Co.*, 54 T.C. 1278 (1970), involved the isolated sale of a piece of undeveloped property by a corporation engaged in the business of developing residential real estate.

Again, I reiterate that I recognize, as have many cases, that a corporation actively engaged in a business can purchase a piece of real estate as an investment and sell that real estate and realize capital gain. This is all any case cited in the majority opinion holds.[1] However, there are a number of cases which hold that where the sole activity of a corporation is the purchase and sale of a piece of real estate, the trade or business of that corporation is the sale of real estate. One such case, *Tomlinson* v. *Miles*, 316 F. 2d 710 (C.A. 5, 1963), involves a factual situation quite similar to that in the instant case. In that case seven individuals were desirous of purchasing a piece of property. They formed a corporation for the purpose of having it take title to the property because of there being seven prospective owners. After the corporation had title to the property, one of the individuals wished to get his part of the property out and the parties agreed to have a part of the property parceled out and deeded to him as an individual. He then transferred his stock to the corporation. Thereafter the corporation never did any development of the real property but sold it in seven separate transactions over a period of about 6 years. It paid the taxes on the land and executed the necessary documents relating to the purchase and sale of the land. The taxpayers who were transferees of the corporation, having been its stockholders before its dissolution, contended that the arrangement in effect created the corporation as a naked trustee to hold title for their benefit and therefore the corporate entity should be overlooked and they should be refunded the corporate income tax which they had paid as transferees. The court pointed out that the individuals had elected for purposes of their own to cause the title of the property to be placed in the corporate entity and for the property to be dealt with in the corporate name. The court stated that the benefits of such an arrangement were obvious. It pointed out that

---

[1] There are a few cases involving partnerships organized to acquire and sell one property in which the courts have considered the partnership to in effect be a joint venture and have therefore looked to the activities of the partners as distinguished from the partnership to determine whether the sale was of property held for sale in the ordinary course of the partners' trade or business. See *George W. Mitchell*, 47 T.C. 120 (1966) ; *Morris Cohen*, 39 T.C. 886 (1936), which involved a group purchase of land by a denominated "joint venture" ; *Robert E. Ronhovde*, T.C. Memo. 1967–243 ; *Commissioner* v. *Williams*, 256 F. 2d 152 (C.A. 5, 1958), reversing a Memorandum Opinion of this Court; *Guggenheimer* v. *Commissioner*, 209 F. 2d 362 (C.A. 2, 1954), affirming 18 T.C. 81 (1952) ; and *Riddell* v. *Scales*, 406 F. 2d 210 (C.A. 9, 1963). The philosophy of considering a one-activity partnership to be a joint venture is comparable to overlooking the entity of a corporation for tax purposes in a proper case.

among those benefits were that no dower rights existed in the wives of the married participants, that in the event of the death of any member of the group no administration would be necessary to clear title to the real estate, and that sales of the property could be made by execution of an instrument signed by officers of the corporation rather than requiring the signatures of all the individuals. The court, after quoting from *Moline Properties* v. *Commissioner, supra,* rejected the taxpayers' contention that the corporation was "not carrying on" a business. The court, in reaching its conclusion, stated that the activities of the corporation in the acquisition and recording of title to the land, surveying the land, paying of taxes on it, searching the titles, selling timber from it, negotiating contracts for sale of different parcels, receiving the purchase-money security deeds, releasing these security deeds, and satisfying those deeds of record, are the " 'equivalent of business activity' and amount to 'the carrying on of business by the corporation.' "

The U.S. Court of Appeals for the Fifth Circuit in the case of *Britt* v. *United States,* 431 F 2d 227 (C.A. 5, 1970), reversed a holding of a District Court that the corporation there involved should be disregarded as a separate taxable entity on the ground that it was not engaged in any business activity. In so doing the court pointed out at page 235, that "a determination whether a corporation is to be considered as doing business is not necessarily dependent upon the quantum of business." The Fifth Circuit held the corporation to be carrying on a business even though its activity was limited to a few transactions.

In my view, the discussion in the majority opinion of cases dealing with whether an individual or a corporation engaged in some other business was also engaged in the business of selling real property has no bearing on the issues in this case.

In *United States* v. *Winthrop,* 417 F. 2d 905 (C.A. 5, 1969), the Fifth Circuit reversed the holding of a District Court that real property was not held by the taxpayer primarily for sale in the ordinary course of his trade or business. In so doing, the court pointed out the factors on which the District Court had relied and stated at pages 909–911:

In relying on these factors the court below was obviously following earlier suggestions by this court that such facts are relevant in determining the ultimate question of whether or not the land in question was held primarily for sale to customers in the ordinary course of business. * * *

Despite their frequent use, this court has often declared that these seven pillars of capital gains treatment "in and of themselves * * * have no independent significance, but only form part of a situation which in the individual case must be considered in its entirety to determine whether or not the property involved was held primarily for sale in the ordinary course of business (source cited)." * * *

\*         \*         \*         \*         \*         \*         \*

In analyzing a case of this sort no rubrics of decision or rubbings from the philosopher's stone separate the sellers garlanded with capital gains from those beflowered in the garden of ordinary income. Each case and its facts must be compared with the mandate of the statute. In so doing we note that the enunciations of the Supreme Court are clarion as they enjoin us to construe narrowly the definition of a capital asset and as a corollary interpret its definitional exclusions broadly. * * *

See also the statement in *Corn Products Co.* v. *Commissioner*, 350 U.S. 46, 52 (1955), that "Congress intended that profits and losses arising from the everyday operation of a business be considered as ordinary income or loss rather than capital gain or loss."

In the instant case all parties agree that Hectare held the Montgomery property primarily for sale. The only issue between the parties is whether the sales were made in the ordinary course of Hectare's trade or business. In my view in the context of this case, it is meaningless to go through the criteria for whether a person is engaged in the business of selling real estate set forth in cases involving individuals or corporations engaged primarily in some other activity. As the court pointed out in *United States* v. *Winthrop*, *supra*, "these criteria have no independent significance." In the instant case, Hectare was engaged in the trade or business of selling the Montgomery property since this was its sole activity. It follows under the facts of this case that the Montgomery property was sold in the ordinary course of Hectare's trade or business.

I would therefore hold that Hectare realized ordinary income from the sale of the Montgomery property, that Hectare properly elected to be taxed as a small business corporation, and that Hectare's income is includable in its shareholders' income in accordance with this election as ordinary income.

However, if the majority opinion is correct in concluding that Hectare was not engaged in the business of selling real property since the sale of such property was its only activity, in my view it follows that Hectare was engaged in no business. Apparently the majority is of the view that a corporation may have a "for profit" activity which is its business for certain purposes but not its "trade or business" within the meaning of section 1221(1). If this view is accepted, it follows that the corporation in fact has no "trade or business" as distinguished from a "profit motive" and therefore, I would conclude such a corporation is not a "business corporation" entitled to the election provided in section 1372.

Section 1371 sets forth the criteria of a corporation entitled to the election. Subsection (a) of section 1371 provides:

(a) SMALL BUSINESS CORPORATION.—For purposes of this subchapter, the term "small business corporation" means * * *

By its very definition of the corporations which are entitled to elect not to be taxed as corporations, these provisions apply only to a business corporation. By definition, they do not apply to a corporation not engaged in business. The intent that a corporation making such an election be engaged in business is made even clearer by other provisions of the statute; for example, the provisions of section 1372 (e) (5), dealing with the termination of an election made by a small business corporation if for any taxable year of the corporation, it has gross receipts more than 20 percent of which is "passive investment income." It is true that a corporation can be engaged in a trade or business and have passive income and that passive investment income is defined to mean "gross receipts derived from royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities." However, in my view, even though income from a trade or business such as rental income may be passive investment income, capital gain not from a trade or business would of necessity be "passive investment income." In my view the reason that sales or exchanges of real estate are not included in this definition is because such sales or exchanges are either in the ordinary course of a corporate trade or business or an isolated transaction of a corporation engaged in another active business. Congress did not want to terminate the election of a corporation for an isolated transaction but never envisioned a corporation engaged only in selling real property as not being in "business." The import of sections 1371–1377 dealing with small business corporations is that the sections apply only to corporations actively operating a business. In fact if over 20 percent of the corporate income is from "passive investment income" as defined in section 1372(e) (5), the corporation loses its election. However, the majority after concluding that the entire income of Hectare is "investment" income and is capital gains, concludes that Hectare is nonetheless entitled to elect to be a small business corporation since it is not specifically excluded from making such an election by a specific statutory provision.

The majority opinion refers to section 1378 which is effective with respect to taxable years of electing small business corporations beginning after April 14, 1966, as not being applicable to the tax years here involved as if it were intended in some way to remedy the situation presented under the holding of the majority in this case for years to which it is applicable. Section 1378 imposes a special tax on capital gains of an electing small business corporation if the excess of the net long-term capital gain over the net short-term capital loss of such corporation exceeds $25,000 and exceeds 50 percent of its taxable income for such year. However, the intent of that section, as shown by the exception contained in section 1378(c) that subsection (a) "shall not apply to an electing small business corporation for any taxable

year if the election under section 1372(a) which is in effect with respect to such corporation for such taxable year has been in effect for the 3 immediately preceding taxable years," as well as by the statements in the committee report, is that the special tax was intended to remedy the avoidance of tax on capital gains by an operating business corporation selling a large amount of property from which capital gains result in one year and then withdrawing its election under section 1372. This section was not designed to deal with a corporation whose only activity is the purchase and sale of one piece of real property and in my view Congress never envisioned such a corporation's being an electing small business corporation unless the property was sold in the ordinary course of that corporation's trade or business. The committee report dealing with the addition of section 1378 to the Code (S. Rept. No. 1007, 89th Cong., 2d Sess. (1966), 1966–1 C.B. 527, 531) makes it clear that the intent of Congress when it enacted the provisions dealing with elections by small business corporations was that these provisions should apply only to corporations engaged in business. This report states:

It has come to your committee's attention that the "passthrough" election has on occasion been used by corporations as a device for the avoidance of capital gains tax: A corporation in such a case arranges to have a large amount of capital gains realized in 1 year, elects the "passthrough" treatment for that year, distributes these realized capital gains, and then deliberately causes its "passthrough" status to be terminated. * * *

Such use of the "passthrough" treatment is contrary to the intent of Congress when it enacted this provision. [secs. 1371–1377] It was basically intended for an operating business which for business reasons desired the corporate structure yet preferred tax treatment similar to that accorded a partnership. It was intended for an organization desiring this tax treatment at least for a number of years and certainly not for a single year as a device to avoid capital gains tax to the corporation.

This bill provides for the problem described above by adding a new provision (sec. 1378) to the tax laws imposing a tax upon the capital gains of a corporation which has elected the "passthrough" treatment under certain limited conditions. * * *

While this committee report is not a report of the same Congress which originally enacted sections 1371 through 1377, the statement of the intent of Congress set forth in that report is clearly gleanable from the statute as originally enacted. The words "business corporation" are used in the definition of the corporations entitled to elect, and the law provides that any corporation with over 20 percent of its total income being from passive investments as therein defined loses its right to elect.

It will be noted that each of the individual taxpayers in this case reported his share of Hectare's gain on the sale of the Montgomery

property as long-term capital gain but deducted all of Hectare's expenses as constituting ordinary loss by Hectare which the stockholders were entitled to deduct. The largest deductions were of taxes and interest. However, the other deductions which caused the ordinary loss consisted of accounting fees, insurance, office expense, and engineering expense. The result of the holding of the majority is that a corporation can elect to be a small business corporation and pass through to its stockholders deductions either for business expense, though it is difficult to see how the corporate expenses could be business expenses if the corporation is not engaged in business, or expenses in the production of income or a transaction entered into for profit, although section 212 allows such deduction only to an individual and not to a corporation. It would appear that in order for organization expenses, insurance, office expenses, and engineering expenses to be deductible by Hectare and consequently deductible by the shareholders, Hectare would have to be engaged in business. Even though the Code provides for deductions of taxes and interest as separate items, the only provision for the other deductions claimed by Hectare and carried forward and claimed as ordinary deductions proratably by Hectare's stockholders would be under section 162 as ordinary or necessary expenses paid or incurred during the taxable year in *carrying on a trade or business*. See *Higgins* v. *Commissioner*, 312 U.S. 212 (1941), denying deductions for "business expenses" to an individual for expenses in connection with investments in and purchase and sales of stock since this activity did not constitute the "carrying on" of a "business" by the individual. It is common knowledge that the decision in this case led to the enactment of the provisions now contained in Code section 212 allowing an individual to deduct "nonbusiness" expenses. In my opinion a corporation was not included within the provision of "nonbusiness" expense deductions since the activity, if any, of a corporation is its business and its expenses would either be business expenses or would not be deductible expenditures. Under the holding of the majority a corporation not engaged in "carrying on a trade or business" is entitled to be an electing "small *business* corporation" (emphasis supplied) and is entitled to deductions for expenses of *carrying on a trade or business* which may be carried through as deductions by its shareholders even though the corporation has no ordinary income.

In my view section 1.1375-1(d), Income Tax Regs., is not concerned with a "situation wherein a subchapter S corporation would be availed of merely to sell property" since such a corporation would be in the trade or business of selling property and the sale would not result in capital gain. This section of the regulations is dealing with a corporation engaged in carrying on a trade or business which as an incidental

matter sells a piece of property which is a capital asset in its hands but would *not* be a capital asset in the hands of its shareholders. That this is the proper interpretation of this regulation is shown by the examples given in section 1.1375–1(e) of the regulations which in each instance refers to the corporation's having *current earnings and profits and capital gains.*

In my view the intent of Congress that an electing small business corporation be engaged in carrying on a trade or business is so apparent that violence is done to the whole concept of the provisions of sections 1371 through 1378 to hold a corporation not to be engaged in carrying on any trade or business but to be entitled to be an electing small business corporation.

Also, since neither party has raised any issue with respect to the provisions of section 1.1375–1(d), Income Tax Regs., in this case I do not consider this case to involve the application of that regulation. Respondent's notice of deficiency did not determine even alternatively that section 1.1375–1(d), Income Tax Regs., was applicable to petitioners and respondent has made no argument that this subsection of the regulations is applicable to petitioners. Since I would not expect petitioners to be required to disprove the application of a regulation which respondent had not determined to be applicable to them, I would not consider, as does the majority, that "the regulations at 1.1375–1(d) require * * *that a determination be made with respect to the character of the property in the hands of the shareholder, for if the property is held not to be a capital asset in his hands, then the gain is to be treated as ordinary income." In effect, the majority is requiring petitioners to produce proof of an item not in issue in this case.

However, I must note that had respondent determined section 1.1375–1(d) of the regulations to apply in this case, I would consider the evidence here presented totally insufficient to show its provisions to be inapplicable. There is no evidence of the business activities of Fay S. Howell and Jan P. Chase, except what may be gleaned from their joint returns with their respective husbands for the 2 years here in issue. Both of these returns report income from a number of sources. Fechtel was not a petitioner in this case and his returns are not in evidence, and there is no evidence as to his business activities. Howell, who was not a shareholder of Hectare, was a real estate agent and on his 1965 return reported income from a joint venture that sold some real property. His wife, Fay, was the shareholder. She reported income in both 1965 and 1966 from directors fees as did her husband. Also, Howell reported income from a trust fund. In 1966 Howell reported a net operating loss from "The Five Smiths, Inc. (Small Business Corp.)" and the record shows nothing as to the business of this

corporation.[2] Hardin was an officer of Ira H. Hardin Co. which was engaged in building commercial and industrial buildings. His father, Ira H. Hardin, was actively engaged during the years here in issue in developing the Atlanta DeKalb Industrial Park on land adjoining the Montgomery property. For all this record shows, Howell's interest in participating as a stockholder in Hectare was to have a say in the disposition of the Montgomery property in case he wished to extend his father's development. Hardin did on several occasions participate in groups that developed real properties.

The returns of George E. Chase and Jan P. Chase for both 1965 and 1966 show participation in real estate enterprises and several sales of real property in joint ventures. Almost all of the income reported on their returns is from some form of real estate activity.

In fact all of the individual petitioners in this case were in some form of real estate business. Whether the sale of the Montgomery property had it been owned by these petitioners in a joint venture would have been in the ordinary course of those businesses or any one of them is not shown by this record and there is no reason, considering the issues presented for decision here, why any such showing should have been made.

While in my view no issue with respect to section 1.1375-1(d) of the regulations is in this case and I would make no reference to that section, I feel compelled to note that were it involved and the burden of proof with respect to its lack of applicability on petitioners, I would hold on the basis of this record that petitioners had completely failed to carry that burden.

It may be that in effect the holding of the majority is to treat Hectare as if it were a joint venture of its stockholders and conclude that since respondent has not shown that the joint venturers were engaged in the trade or business of dealing in real property, their joint venture is not a trade or business within the meaning of section 1221(1).[3] In my view this amounts to overlooking the corporate entity of Hectare even though neither party contends that it was not a viable corporation for Federal income tax purposes and placing the burden of proof on respondent and not petitioner on an issue not raised by either party.

[2] The last sentence of sec. 1.1375-1(d), Income Tax Regs., reads:
For this purpose, in determining the character of the asset in the hands of the shareholder, the activities of other electing small business corporations in which he is a shareholder shall be taken into consideration.

[3] In *Riddell* v. *Scales*, 406 F. 2d 210, 213 (C.A. 9, 1969), the Court stated:
"Taxpayers who are not themselves engaged in the business of dealing in real property can form a joint venture for the purpose of acquiring and disposing of a parcel of property as an investment without thereby becoming real estate dealers. Their venture is not a trade or business within the meaning of 26 U.S.C. section 1221(1). (Commissioner of Internal Revenue v. Williams (5 Cir. 1956) 256 F. 2d 152, 155) * * *"
See also *Robert E. Ronhovde* (Scott, J.), T. C. Memo. 1967-243, in which it was held that a partnership which was in substance a joint venture was not engaged in a trade or business within the meaning of sec. 1221(1), I.R.C. 1954, where the "joint venturers" were not engaged in the trade or business of selling real estate.

However, I again state that my conclusion is that Hectare was carrying on the business of selling the Montgomery property and that property was sold in the ordinary course of that business. *Tomlinson* v. *Miles*, *supra*. Therefore, I would consider the receipts by Hectare less its proper deductions including its business expenses to be ordinary income taxable as such to its shareholders since Hectare properly elected under section 1372 not to be taxed as a corporation.

GOFFE, *J.*, agrees with this dissent.