T.C. Memo. 1995-480


UNITED STATES TAX COURT


CHRISTINE C. DEIGNAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17309-93.                    Filed October 4, 1995.


Mark R. Schuling, for petitioner.

Jeffrey A. Schlei, for respondent.


MEMORANDUM OPINION


RAUM, Judge:  The Commissioner determined deficiencies in petitioner's Federal income taxes totaling $28,802 in 1986 and $28,961 in 1989.  At issue is whether a loss from the sale of real estate should be characterized as ordinary or capital.  The parties agree that the resolution of this issue controls the treatment of the loss carried back to 1986.

Petitioner, Christine C. Deignan, resided in Davenport, Iowa, at the time the petition in this case was filed. She became licensed as a physician in 1977, and, since then has engaged in the solo practice of internal medicine.

In 1977, petitioner married Paul Deignan. The couple purchased a residential lot in Davenport, Iowa, at 2801 East 42nd Street in 1984 on which they planned to construct a personal residence. They began construction in 1987. However, on October 9, 1987, before completion of the house, petitioner filed a Petition for Dissolution of Marriage in the Iowa District Court for Scott County. At that time, she stopped contributing financially to the construction project.

On February 19, 1988, Paul Deignan filed a Motion to Preserve Assets. Lacking sufficient funds to complete the project himself, he sought an order "requiring that the Petitioner [Christine Deignan] cooperate in expending joint assets, sufficient to complete the home in the most expeditious manner consistent with good construction practice."

In the divorce decree issued on October 5, 1988, the court ordered petitioner to "complete the home at her expense." The decree directed that, upon completion of the house, title would be held by petitioner and her ex-husband as tenants in common. The court further directed that the house be sold as soon as completed, with petitioner and her ex-husband splitting the proceeds of the sale equally.

In December 1988, petitioner purchased her ex-husband's interest in the property for $62,500. The following spring, construction of the property was completed. At about the same time, petitioner listed the property for sale with Mel Foster Co., a real estate agency. After 6 months without success, she listed the property with another real estate agency, Ruhl & Ruhl Realtors, Inc. In September 1989, petitioner sold the property for $166,000. Neither before nor since the sale has petitioner participated in the business of building houses or selling real estate.

Petitioner filed U.S. Individual Income Tax Returns, Forms 1040, for the taxable years 1986 and 1989. Her 1989 return contained two Schedules C, Profit or (Loss) From Business or Profession. The first, relating to her internal medicine practice, showed gross income of $380,095 and a net profit of $105,629. The second, which listed her business as "Construction Housing", showed a net loss of $179,596. Petitioner claimed an overall loss of $73,967 from business activities in 1989, i.e., the difference between her $105,629 net income from her medical practice and her $179,596 loss from the "business" involving the sale of the house. She carried back that $73,967 loss to 1986[1]

---

[1] Since that claimed $73,979 loss was combined with other items on petitioner's 1989 return to produce a zero amount of tax, and since, as we hold hereinafter, the carryback was incorrectly claimed, we need not consider what the correct amount of the carryback would be if it were otherwise allowable.

by filing an amended U.S. Individual Income Tax Return, Form 1040X, and claimed a refund for 1986.

In the notice of deficiency, the Commissioner determined that petitioner was not in the business of constructing and selling houses. As a result, petitioner's claimed $179,596 ordinary loss was recharacterized as a capital loss. Because section 1211[2] limits the deductibility of capital losses of individual taxpayers to $3,000 a year, respondent also denied the claimed net operating loss carryback deduction.

The parties have stipulated that if respondent's determination is sustained, petitioner's taxable income for 1986 must be increased by $73,967. The parties have also stipulated as to certain other adjustments that were taken into account in the deficiency notice.

Section 165(a) generally allows taxpayers to deduct any losses sustained during the taxable year that are not compensated for by insurance or otherwise. Section 165(c) limits the scope of this deduction for individuals. Petitioner claims that the deduction in controversy is an ordinary loss, allowable under section 165(c)(1) as a loss "incurred in a trade or business."

If a loss is characterized as capital, however, it is subject to even stricter treatment than ordinary losses under the

---

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Code.  For individuals, the deduction of capital losses is limited to the lesser of $3,000 a year or the excess of such losses over capital gains.  Sec. 1211(b).  Any remaining capital loss is deductible in the succeeding taxable year as provided in section 1212(b).

Capital loss treatment applies primarily to the disposition of capital assets.  Section 1221 defines a capital asset as "property held by the taxpayer (whether or not connected with his trade or business)," but excludes four categories of assets, only one of which is of relevance here, namely:

> (1)  stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; [Emphasis added.]

The issue, whether the property in question was a capital asset, therefore turns on whether petitioner was engaged in the "trade or business" of selling real estate, holding the property for sale to customers in the ordinary course of such a business.  We hold that she was not.

A number of factors have been considered in determining whether property is held primarily for sale to customers in the ordinary course of business.  A non-exclusive list of these factors includes:

> (1) The purpose for which the asset was acquired; (2) the frequency, continuity, and size of the sales; (3) the activities of the seller in the improvement and disposition of the property; (4) the extent of

improvements made to the property; (5) the proximity of sale to purchase; and (6) the purpose for which the property was held during the taxable years.  * * *

Howell v. Commissioner, 57 T.C. 546, 554 (1972).  Additional factors include the amounts of income received from the taxpayer's regular business as contrasted with the amounts received from the property as well as the regularity and consistency of the taxpayer's activity regarding the property. Adam v. Commissioner, 60 T.C. 996, 999 (1973).  These factors are considered together, Buono v. Commissioner, 74 T.C. 187, 199 (1980), but no single one is dispositive.  Oace v. Commissioner, 39 T.C. 743, 747 (1963); Vidican v. Commissioner, T.C. Memo. 1969-207.  Whether the taxpayer holds the property as a capital asset or an ordinary one is a question of fact.  Daugherty v. Commissioner, 78 T.C. 623, 628 (1982); Sottong v. Commissioner, T.C. Memo. 1966-268.

Petitioner asserts that she sold the house to customers in the ordinary course of business.  A taxpayer may have more than one trade or business.  Cottle v. Commissioner, 89 T.C. 467, 489 (1987).  However, petitioner has the burden of establishing that she was engaged in a business.  Rule 142(a).  Petitioner has not met this burden.

First, petitioner originally acquired the property for personal reasons, to build a home with her husband.  Second, her sale of the property was a one time event.  Petitioner did not present any evidence that she even considered buying other

properties.  Third, petitioner took a relatively passive role in disposing of the property.  She presented no evidence that she made any independent efforts to sell the property.  She merely listed the property with realtors upon its completion, as she would have been required to do by court order prior to purchasing her divorced husband's interest in the property.

Fourth, petitioner did not make any improvements to the property.  In the uniform residential appraisal report filed with the divorce decree, the appraiser says of the property, "With shutters and landscaping, it should have adequate if less than typical appeal.  The interior is unusual and creates some obsolescence."

The appraiser also states that "there are significant adjustments for design/appeal, and functional utility.  In my opinion subject will be penalized."  Despite these opinions and predictions, petitioner did not have any architectural modifications made in the course of completion of the house to increase the salability of the property.

Fifth, there is no evidence that petitioner held the property for a business purpose.  The burden rests on petitioner to show that the purpose for which she held the property changed to a business one.  Heiner v. Tindle, 276 U.S. 582 (1928); Paffrath v. Commissioner, T.C. Memo. 1961-71.  Other than a bald assertion by petitioner that the court order transformed petitioner's purpose into a business one, petitioner has

presented no evidence that would support a finding that there was a conversion to a business purpose. She has not demonstrated that she held the property for a business purpose.

Sixth, petitioner did not receive any income from the sale of the house. The only positive income she received in 1989 came from her medical practice. Finally, there was no regularity and consistency in petitioner's activity regarding the property. When petitioner filed for divorce, she stopped paying any of the bills connected with the house. This action is inconsistent with her claim that the house was a business property that she intended to sell at a profit. She resumed paying the bills and eventually sold the property, but these actions were strictly in compliance with the court order. She made no sales efforts on her own to indicate that she considered selling the house as a business venture rather than a court-imposed obligation, obviously all in the nature of a salvage operation.

Petitioner argues that the similarity of her case to Bassett v. Commissioner, T.C. Memo. 1976-14, entitles her to an ordinary loss deduction. In Bassett, the taxpayers purchased a lot on which to build a home. Because of marital difficulties, the couple decided to complete the house, but not as their personal residence. Before resuming construction, the husband consulted with the architect and builder. Although they modified the designs to cut costs as well as to give the house a wider commercial appeal, the taxpayers eventually sold the house at a

loss.  This Court held that the taxpayers had engaged in a transaction for profit and were entitled to the loss deduction under section 165(c)(2).  Id.  Unlike Bassett, we cannot find on the record in this case that the "only reason for completing the structure was in furtherance of his [the husband's] intention to realize a profit."  Id.

It is our judgment in this case that at most petitioner completed construction and promptly undertook to sell the property only to salvage what she could out of an unfortunate situation.  Further, unlike Bassett, at the time of completion petitioner had no modifications made in the plans for the house, which had been designed to meet the personal needs or wishes of petitioner and her husband and which rendered the property less attractive for purposes of sale and less likely to generate a favorable sales price.  Although there is some similarity between this case and Bassett, there are obvious factual differences between them, and in our judgment those differences call for treating this case as lying on the other side of the line, particularly since Bassett itself was at best a close case.[3]  Moreover, the loss allowed as a deduction in Bassett was allowed under section 165(c)(2), which is concerned with capital losses and for that reason alone would be of no help to petitioner.

---

[3] As to cases in general falling on the opposite side of the line, see Borchers v. Commissioner, 95 T.C. 82, 93-94 (1990), affd. 943 F.2d 22 (8th Cir. 1991).

The parties have stipulated that if this Court rules in favor of respondent, the loss claimed by petitioner in 1989 should be recharacterized from ordinary to capital.  Because capital losses may only be carried forward, our finding also results in the elimination of any carryback of the loss to 1986.

<u>Decision will be entered</u>

<u>for respondent</u>.