ESTATE OF L. B. WHITFIELD, DECEASED, FRED S. BALL, JR., JOHN A. MILLER AND L. B. WHITFIELD, JR., EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF L. B. WHITFIELD, DECEASED, FRED S. BALL, JR., JOHN A. MILLER AND L. B. WHITFIELD, JR., EXECUTORS, ALLEGED TRANSFERREE OF WHITFIELD REALTY COMPANY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 19467, 19468.    Promulgated May 9, 1950.

*H. C. Kilpatrick, Esq.*, for the petitioners.
*S. Earl Heilman, Esq.*, for the respondent.

## OPINION.

DISNEY, *Judge*: The sole question left for our consideration is whether the gain realized on the sale of the Pensacola property is taxable to the Realty Co., as determined by the respondent, or to the

decedent, as contended by the petitioners. The point of difference between the opposing parties is whether the Realty Co. should be recognized here as a taxable entity. Petitioners assert that the Realty Co. was organized for the sole purpose of holding title to the decedent's Florida real estate to avoid the trouble and expense that would be involved in administration proceedings in the event of his death while seized of the property and that it engaged in no activity other than as a passive holder of record title to the real estate and matters incident thereto and flowing from its corporate existence. The respondent contends, in effect, that the activities of the Realty Co. were broad enough to require that the corporate form be recognized for tax purposes.

The general rule is that a corporation is a taxpayer separate and distinct from its stockholders, even though, as here, all of the stock is owned by one individual, and the corporate entity may be disregarded only in exceptional circumstances, such as where it is a sham or unreal. *Burnet* v. *Commonwealth Improvement Co.*, 287 U. S. 415; *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435; *Moline Properties* v. *Commissioner*, 319 U. S. 436; *National Carbide Corporation* v. *Commissioner*, 336 U. S. 422. In the *Moline Properties* case the Court said:

The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. * * *

One of the purposes for the organization of the Realty Co. was avoidance of costly and prolonged ancillary administration proceedings at the situs of the properties in the event the decedent was the owner thereof at the time of his death. If the Realty Co. had no purpose other than to hold bare title, and did not engage in business, as petitioners assert, the case would fall within a recognized exception to the general rule. *North Jersey Title Insurance Co.* v. *Commissioner*, 84 Fed. (2d) 898; *United States* v. *Brager Building & Land Corporation*, 124 Fed. (2d) 349; *Paymer* v. *Commissioner*, 150 Fed. (2d) 334. Here, there were other purposes, and the formation of the corporation was followed by activities sufficient to constitute a business separate from the individual.

The decedent's Florida attorney testified not only that he recommended that the corporation be organized to hold title, but that the decedent "thereafter conduct and operate that real estate in the name of the corporation." The objective of the plan so recommended was a corporate form of operation of the business then being conducted

by the individual to avoid consequences that would flow from continued individual operation, and to give him all of the resulting advantages.

The charter of the Realty Co. provided for a business to acquire, own, sell, and otherwise dispose of real estate and for all the powers conferred by the general laws of Alabama. Thus, the Realty Co. had power to transact a business of acquiring and disposing of real estate, with the statutory powers conferred by the general laws of Alabama upon such a corporation.

Promptly upon its organization, the corporation acquired the decedent's Florida real property by deed. The instrument of conveyance did not exclude the leases outstanding on the properties, only specifying that the grant was subject to a certain mortgage. That the corporation acquired leases on the Pensacola property is definitely shown by an assignment thereof in the deed executed in 1942 in connection with the sale in question. No proof was made and petitioners make no contention that the Realty Co. was not the lessor under all of the leases outstanding on the properties during the taxable year. The income tax returns filed by the corporation show in different years expenses deducted for rental commissions, or commissions, renewal fees, or lease renewal fees. The leases were on a yearly basis, so that obviously leases were *renewed*. No one but the corporation, holding title, could validly renew them. The rents were on a monthly basis, therefore requiring attention, which might in fact explain such expense items as legal expense. Travel and auditing expenses were deducted, and the balance sheets showed reserve for bad debts. For 1942 some of such expenses appear under "cost of operations," though shown as "other deductions" in other years. For 1941 short term capital gain is shown from "earnest money recovered," with $660.81 expense deducted therefrom, from which it appears that in that year there was some capital transaction involving recovery, at expense, of moneys put up as earnest. This appears a matter of doing business. Such activities are beyond a mere holding of bare legal title, or the status of "passive holder of title," as the petitioner phrases it. It discloses the operation of a business of owning property for rental and sale purposes in accordance with the pattern made by the sole stockholder. As above seen, in one year "operation" was affirmatively recognized in the deduction of "cost of operations" and essentially the same items were claimed in other years as deductions of expense. The corporation by its income tax returns recognized that rental receipts constituted income taxable to it, and not to the individual who owned its stock. Notwithstanding this procedure and recognition by the Realty Co. of receipt of rental income, petitioners assert that the decedent received the rents in his individual capacity

after the conveyance of the real estate to the corporation. The evidence is no more than that rental payments were remitted directly to the decedent by the agents appointed to collect rents from the lessees. Nothing in the evidence establishes that he did not receive the money in his capacity as an officer of the Realty Co. Even if he did not, the corporation, as the lessor, was the entity entitled to the rentals. Neither is the fact that the rentals collected, less expenses, were applied to personal debts of the decedent decisive of the question. That was merely an agreement between the Realty Co. and the Syrup Co. not altering the status of the former for tax purposes. The decedent did not treat the amounts as income to him. He reported the net rentals as compensation received as an officer of the corporation.

The absence of a corporate office, bank account, and permanent employees is not controlling. *Paymer* v. *Commissioner*, *supra*. Books which were regarded by the corporation as sufficient for its purposes were maintained by the bookkeeper of the Syrup Co. Under the plan adopted for recording financial transactions involved in the operation of the properties, entries appeared in books of both the corporation and the Syrup Co. No bank account was required under the arrangement decedent had with the Syrup Co. to turn over to it all rental receipts for application, less expenses, on his indebtedness to it. Expenses were incurred in owning and leasing the properties, and deductions therefor were claimed by the corporation in its income tax returns. Though the petitioners suggest in effect that matters such as the corporation's filing state franchise returns, filing income tax returns, and claiming deductions for expenses are mere matters of form, we can not so agree. They are ordinary business practice of a corporation doing business, and convincing indicia not only of the reality of such corporation, but of the fact that its officers at that time considered it as carrying on business.

The petitioners contend that the Realty Co. did not assume liability for the decedent's mortgage debt. The Pensacola property was conveyed to the Realty Co. subject to a mortgage held by the Prudential Insurance Co. and without any provision in the deed for assumption of the debt by the grantee. Notwithstanding the terms of the conveyance, the opening balance sheet of the Realty Co. discloses one liability in the amount of $25,936.73, consisting of bonds, notes, and mortgages having a maturity of one year or more, and the balance sheet on January 1, 1942, discloses a like liability in the amount of $23,177.68. It thus appears that the corporate officers recognized liability. The liability does not appear, however, in the balance sheet for the end of 1942. In this connection and in connection with the fact that the Realty Co. never was sued, it is worthy of note that

it executed a warranty deed to the Pensacola property. Such deed subjected the corporation to the possibility of suit on warranty, and the warranty of title by the corporation is in a real sense an affirmation of the reality, and responsibility, of the corporation-warrantor. It is hardly consistent with the position of naked holder of title. In so warranting, the Realty Co. assumed liability, even if it did not do so on the mortgage.

While there is testimony in the record that the Realty Co. had no employees, opposed to such testimony is the fact that $330 was deducted in the 1942 return for salaries and wages in addition to the amount paid to the decedent, which was deducted as compensation paid to officers. Likewise, though there is testimony that no advertising was done, or office stationery, these items appear among expenses claimed though in small amounts, advertising in 1941 and stationery in 1939. With these facts before us, we can not say that there was no advertising and no stationery.

Petitioners contend that the issue here is governed by cases such as *Thomas K. Glenn*, 3 T. C. 328, and *United States* v. *Brager Building & Land Corporation, supra.* In the *Glenn* case the purpose for which the corporation was organized contemplated the holding of title to certain real property and such other property as the sole stockholder might transfer to it; nothing in the evidence indicated that the stockholder ever intended the corporation to engage in business; the stockholder agreed at the time the corporation was formed to pay, and did pay, taxes and assessments on the property transferred to it and organization expenses; the corporation had no income or expenses and functioned only as a record holder of real estate and stock and beneficiary of insurance on the life of the stockholder. Here, while a purpose for forming the corporation was personal in the sense that it had to do with administration of the property in Florida, to accomplish that objective a corporation was formed to and did operate the business formerly conducted by the decedent as an individual.

*United States* v. *Brager Building & Land Corporation, supra,* is also distinguishable. In that case the corporation had no function other than to serve as an agency for passive holding of legal title to property and had no business activities, contrary to the facts here.

After analysis of all of the facts before us, we conclude and hold that the Realty Co. was engaged in business activities during the taxable year and realized gain, taxable to it, on the sale of the Pensacola property. On account of adjustments necessary under the stipulation of the parties,

*Decisions will be entered under Rule 50.*