## WHITFIELD'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.
### No. 13569.

United States Court of Appeals,
Fifth Circuit.

Nov. 6, 1951.

Rehearing Denied Dec. 6, 1951.

H. Cecil Kilpatrick, Washington, D. C., for petitioner.

Carlton Fox, Ellis N. Slack, Special Assts. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, W. Herman Schwatka, Special Atty., Washington, D. C., for respondent.

Before HOLMES, STRUM, and RIVES, Circuit Judges.

HOLMES, Circuit Judge.

This is a petition to review two decisions of the Tax Court. The petitioner in each case is the estate of L. B. Whitfield, deceased. The question involved in one case is the correctness of the determination of a deficiency in the income taxes of the decedent for the period ending with the date of his death, November 30, 1942, growing out of the sale of real estate, title to which was held by a corporation of which decedent was the sole stockholder. The questions involved in the other case are (a) the liability of that corporation for income taxes resulting from said sale; and (b) the liability of the estate, as a transferee of the assets of the corporation, for such taxes. All questions of law and fact apply equally to both proceedings. The cases were consolidated for hearing by the Tax Court; and were consolidated by this court for review.

L. B. Whitfield was the owner of certain parcels of real estate in Pensacola and Miami, Florida. He was majority stockholder in the Alabama-Georgia Syrup Co., and had borrowed substantial sums from that company. In 1934, the banks required that decedent give to the Syrup Company his promissory note for the total amount due it; that his note be secured by mortgages on his real estate in Florida; and that all rents received from the Florida properties be turned over to the Syrup Company in reduction of his indebtedness to it. This was done, and from that time on all rents received by decedent were turned over at once by decedent to said company in reduction of his debt.

Decedent's Florida attorney recommended to decedent that, to avoid ancillary administration proceedings on his estate in Florida, he organize a corporation to hold title to the property, and operate the real estate in the name of the corporation. In 1938, the Whitfield Realty Company was organized under the laws of Alabama. Decedent held all shares of the corporation except two qualifying shares, which were later endorsed over to him. The charter of the Realty Company stated that the object for which the corporation was formed was to acquire, own, sell, and otherwise dispose of real estate, and to have all of the powers conferred upon such corporation by the general laws of Alabama. The officers of the corporation were decedent as president, his son as vice-president, and Chisholm as secretary-treasurer of both corporations. Prior to the organization of the Realty Company, the decedent and his attorney in Montgomery informed Chisholm and decedent's son that the purpose of forming the corporation was to take title to the property of the decedent in Florida, and save administration expenses. Chisholm was informed that the net income of the corporation would be paid to decedent at the end of each year as salary.

In 1938, the decedent conveyed to the Realty Company two lots situated in Miami, and a parcel of real estate in Pensacola, subject to a mortgage outstanding on the prop-

496

erty in Pensacola. The real estate was rental property. There were leases outstanding on the property, all on a yearly basis, with rental payable monthly. The properties were entered on the books of the Realty Company at a value of $88,936.87. The Realty Company had no office or permanent employees; it was not listed in telephone or city directories; it was never a party to a suit in court; it never borrowed money or incurred any indebtedness; it had no bank account, and owned no assets other than the real property conveyed to it by the decedent at the time of its organization.

After the organization of the Realty Company, there was a continuation of the procedure of transmitting rentals from the Florida properties to the Syrup Company for application on the indebtedness of the decedent to it. The amounts so received by said company were deposited in its bank account. Expenses of operating the properties, and other disbursements on account thereof, were paid by the Syrup Company. Appropriate entries were made on the books of the company for the receipts and disbursements. The net rentals were credited to decedent's indebtedness to said company. From vouchers prepared by the Syrup Company for the receipts and disbursements, its bookkeeper made corresponding entries, under the supervision of Chisholm, in books bearing labels reading "Whitfield Realty Co.," one of which books contained entries for the original stock subscriptions, payments thereon, and cost of the properties, with a balancing credit to surplus for the Pensacola property. The books were kept with the decedent's records in the office of the Syrup Company. Similar records were kept for the decedent prior to the corporate organization.

The Tax Court found that the corporation was not organized merely to subserve the alleged purpose of avoiding ancillary administration proceedings in Florida, and that it did not exist merely as the passive holder of the title of property which continued to belong to the decedent. 14 T.C. 776. The crucial question in the case is whether the findings of the Tax Court are clearly erroneous. We think they are not, and that the evidence to support the findings

was ample and substantial. The applicable law of the case is governed by the principles announced in Commissioner v. Moline Properties, Inc., 5 Cir., 131 F.2d 388, affirmed in 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499.

The judgment of the Tax Court is affirmed.