THE BARTELL HOTEL CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67974. Filed April 30, 1959.

*Thomas J. Kennedy, Esq.*, and *E. S. Hampton, Esq.*, for the petitioner.
*Sylvan Siegler, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined deficiencies in income tax of petitioner for the years 1951, 1952, and 1953 in the respective amounts of $30,547.03, $13,502.60, and $5,741.79, together with additions to the tax under section 291(a) of the Internal Revenue Code of 1939 for the taxable years 1952 and 1953 in the respective amounts of $4,616.32 and $1,435.45.

The principal issue involved is whether income derived from the operation of a hotel during the years 1951 to 1953, inclusive, was taxable to petitioner, the owner of the hotel. Because of our decision on this issue, other issues, involving the statute of limitations and additions to tax for failure to file corporation income tax returns, need not be considered.

### FINDINGS OF FACT.

Some of the facts were stipulated and they are found accordingly.

Petitioner is a Kansas corporation with its principal place of business in Junction City, Kansas, and prior to 1951 its outstanding stock was owned by members of the Lamer family. Crossroads Apartment

Hotel, Inc., hereinafter called Crossroads,[1] is a Kansas corporation with its principal place of business in Junction City, Kansas, and prior to 1951 its outstanding stock was owned by members of the Lamer family.

During the years prior to 1951, petitioner operated the Bartell Hotel which it owned, in Junction City, and Crossroads operated the Crossroads Apartment Hotel in Junction City, which it owned.

On December 20, 1950, the Lamer family entered into an agreement with Frank W. Logan and Norman S. Beaman for the sale of the stock in petitioner and Crossroads to Logan and Beaman. The agreement provided for a cash payment to the Lamers of $30,068.30 and the purchasers' note in the sum of $176,000, payable $1,825.12 monthly with the stock pledged as security.

Sometime prior to January 1, 1951, Beaman and Logan requested the firm of Horwath & Horwath, accountants and auditors, to submit its recommendations regarding a proposed reorganization of the companies operating the Bartell Hotel and the Crossroads Apartment Hotel. The recommendations of Horwath & Horwath were contained in a letter to Beaman and Logan dated January 15, 1951, and included, among others, the formation of a new corporation to which would be transferred the buildings and other fixed assets of petitioner and Crossroads, the complete liquidation of petitioner and Crossroads, and the operation of the two hotels by the new corporation. The letter stated, in part:

we feel that, in view of the interrelation of the functional and operational problems of the two hotels, it would be desirable to consolidate their operation. This step ignores the fact that for federal income tax purposes, it would be more desirable to continue operations as a separate corporation. It is impossible to forecast the amount of any savings from joint purchasing, advertising, promotion, accounting and management, but we feel that such economies should partially offset any income tax disadvantages.

In January 1951, after purchasing the stock of the two corporations, pursuant to the agreement with the Lamer family, Beaman and Logan formed a new corporation, the B & L Hotel Company, Inc., hereinafter called the B & L Company, with its principal place of business at Junction City, Kansas.

The B & L Company adopted a fiscal year ending September 30, and, although the Bartell Hotel building was not transferred to it, the B & L Company went into immediate possession of the hotel building which was a 3-story brick building containing about 100 rooms, a dining room and kitchen, banquet room, and about 10 business places located on the ground floor.

---

[1] Crossroads' tax is not involved in this action and references to Crossroads are merely made for the purpose of completing the history of what occurred.

B & L Company took over possession of Crossroads Hotel building but it was not transferred to B & L Company. From January 1951 until about August 1954 when Beaman and Logan defaulted in the payments due on the Lamer note, B & L Company remained in possession of the Bartell Hotel and carried on the business previously conducted by petitioner. It applied to the Kansas City Hotel and Restaurant Board for, and was issued, licenses to operate the Bartell Hotel and the Crossroads Apartment Hotel during the years 1951, 1952, 1953, and 1954. It maintained books wherein were recorded the entries pertaining to the operation of the hotel business and prepared daily reports to reflect each day's operation of the hotel. On April 25, 1951, B & L Company wrote the then collector of internal revenue for the district of Kansas to the effect that it had taken over the operation of both the Bartell Hotel and Crossroads Apartment Hotel and requested that it be issued a new employer's identification number for purposes of withholding and social security taxes. New account numbers were issued to the B & L Company and it thereafter submitted quarterly payroll returns covering the operation of the hotel business carried on at the Bartell Hotel and the Crossroads Apartment Hotel. The B & L Company established bank accounts in its name and all receipts and expenditures incident to the operation of the hotel business carried on at the Bartell Hotel and Crossroads Apartment Hotel were deposited in and paid from said bank accounts. The B & L letterheads, envelopes, and stationery were used in the Bartell Hotel and in the guestrooms. It hired all employees working on the premises of the Bartell Hotel and Crossroads Apartment Hotel and paid them from its bank account on its printed checks bearing the name of the B & L Hotel Co., Inc. B & L Company paid all of the property taxes assessed against the two hotels and it executed leases with and collected rents from ground floor tenants. It redecorated and reequipped the restaurant and kitchen of the Bartell Hotel and remodeled one of the ground floor rooms rented to an insurance agency.

For the years ending September 30, 1951 and 1952, B & L Company's books were audited by Horwath & Horwath and its Federal income tax returns were made out by this firm for said years. Another public accountant, Gene McKellar, audited B & L Company's books and made out its income tax returns for the years ending September 30, 1953 and 1954. In all of these income tax returns B & L reported the income derived from the operation of the Bartell Hotel and Crossroads Apartment Hotel and B & L paid the tax shown to be due on the income as reported.

The books of account of the petitioner show no entries and no activity of any kind from January 1, 1951, to August 2, 1954. For each of

the years here involved petitioner merely filed with the collector of internal revenue at Wichita, Form 1120 on which appeared statements such as "No Business Transacted in 1951," or "NO ASSETS NO LIABILITIES NO BUSINESS" typed on the form for 1952 and "NO ASSETS NO LIABILITIES NO INCOME" typed on the form for 1953, and on all of the forms the word "none" was written opposite the line "Total income and excess profits tax due."

During all of the years involved the legal title of the Bartell Hotel was in petitioner.

Respondent determined the income derived from the operation of the Bartell Hotel for the years here involved was income realized by petitioner. It is stipulated that if petitioner realized taxable income from the operation of the Bartell Hotel, its taxable income for the taxable years 1951, 1952, and 1953 amounted to $22,500, $20,372.29, and $1,139.31, respectively, and for the year 1954 petitioner sustained a loss in the amount of $21,543.62.

OPINION.

Respondent states on brief that "[t]he principal question presented for decision is whether during the years 1951, 1952 and 1953 the income resulting from the operation of the Bartell Hotel was taxable to petitioner rather than to B & L."

Respondent's position on brief is "that petitioner, as owner of the income-producing property [the Bartell Hotel], is chargeable with the income derived therefrom." Petitioner's position is that, although legal title to the Bartell Hotel was in petitioner, the activity of the hotel business that produced the income was that of B & L Company and the mere fact that petitioner held legal title to the hotel building does not mean it is chargeable with the income from the hotel business; that said income was properly chargeable each year to B & L Company and not to petitioner.

Section 22(a) of the Internal Revenue Code of 1939 provides, in part, for the inclusion of the income "growing out of the ownership or use" of property.

It seems indisputable that the Bartell Hotel was *used* by the B & L Company in the conduct of its hotel business. It is equally without question that the income here involved was income "growing out" of such use by B & L Company. It is admitted that B & L Company had actual physical possession and control of the property and was in complete charge of the hotel business there carried on, during all of the years involved. Under the statute, income can be attributable to either "ownership" or "use" of property. The kind of income we are here dealing with is income derived from use of property in the conduct of a hotel business, and not income derived from mere ownership of property.

Almost the precise question presented in this case was considered in *Albert Nelson*, 6 T.C. 764. There taxpayer's wife held the legal title to the hotel building where her husband conducted his hotel business. We held the income derived from the hotel business was not the income of the wife growing out of the ownership of the property by reason of title thereto being in her name, but was income derived from her husband's business and growing out of his use of the property and was taxable to him under section 22(a), I.R.C. 1939.

In *L. T. Campbell, Inc.* v. *Commissioner*, 159 F. 2d 629 (C.A. 5, 1947), affirming a Memorandum Opinion of this Court, a widow and her son, as independent coexecutors, carried on decedent's trucking business for a time and then formed a corporation to take it over. There was no formal conveyance of the property to the corporation but the evidence showed the corporation took physical possession of the property, insuring and licensing trucks in its name, and the corporation held itself out as the operator of the business. The Tax Court's finding that the corporation conducted the business and was, therefore, taxable for the income from the business, was upheld.

Respondent cites *2 Lexington Avenue Corp.*, 26 T.C. 816, and *Estate of L. B. Whitfield*, 14 T.C. 776, affd. 192 F. 2d 494 (C.A. 5), as supporting his position. Actually the cited cases are authority for petitioner's position. In *2 Lexington Avenue Corp.*, which respondent labels as "a closely analogous case," there was involved the income derived from the operation of a hotel during the months between the execution of a purchase contract for the sale of the hotel and the closing of the sale. During this interim the vendor retained possession of the hotel, management of the hotel operation, and the risk of loss. We held the income was attributable to the vendor, the opinion stating:

> Thus, the income in question was earned at a time when the greater bundle of rights or attributes of ownership, including title, possession, management, and the substantial burdens and possibly the benefits of the ownership of the property, were all still possessed by Insurance Company, [vendor] and hence Insurance Company and not the petitioner was liable for the tax thereon. * * *

In *Estate of L. B. Whitfield, supra*, the respondent taxed the gain realized by a realty corporation, upon the sale of realty, to the realty corporation. Petitioners asserted the realty corporation was organized for the sole purpose of being a passive holder of legal title. The opinion recognizes that if the realty corporation "had no purpose other than to hold bare title, and did not engage in business" it would not be taxable. The opinion merely analyzes the facts and concludes the realty corporation was engaged in business activities and was, therefore, taxable.

A situation similar to that in the *Whitfield* case existed in *John A. Mulligan*, 16 T.C. 1489, and there we said, "[T]his situation falls in

that numerous group where the holding of bare legal title to real property is found to be an insufficient ground for taxing income to a corporation having no other function." (Citations.) In the *Mulligan* case the facts are reviewed and it is concluded the corporation holding title had not engaged in other activities, and, therefore, owed no tax.

The balance of respondent's argument on this issue consists of pointing out certain acts of petitioner and B & L Company with respect to erroneous reports and misstatements. On the books and records and on the balance sheets prepared for B & L Company by the accountants, there were shown the assets and liabilities of petitioner and Crossroads as the assets and liabilities of B & L Company. As a consequence of this, B & L Company took deduction for depreciation which only the petitioner, as owner, could take. The income tax of B & L Company is not in issue. If it took a deduction for depreciation, to which petitioner alone was entitled, that is not a reason for shifting the tax on the income to petitioner. Respondent could pursue the matter with B & L Company.

During the years involved petitioner, as a Kansas corporation, filed required reports with the secretary of State of Kansas and made statements therein to the effect that the nature and kind of business in which it was engaged was hotel operation, or owning and operating a hotel. Also B & L Company's report to the secretary of State for 1951 stated it was "in processing of merging Crossroads Apartment Hotel, Inc. and The Bartell Hotel Co., Inc., into this corporation thereby causing dissolution of Crossroads Apartment Hotel, Inc., and The Bartell Hotel Co., Inc." Respondent points out the merger and dissolution did not take place.

All of this evidence would be of interest if there were any dispute as to whether petitioner did or did not operate the hotel business that produced the income in question. There is none. The filed stipulation of facts is in effect a stipulation that the entire hotel business was openly carried on by B & L Company in its own name and not by petitioner. The above evidence would show nothing more than possibly erroneous statements made in reports to the Kansas secretary of state. It has no evidential value here where income is to be attributable to the corporation that actually conducted the hotel business that produced the income and the stipulated facts show petitioner did not conduct such business.

We hold that the income derived from the operation of the Bartell Hotel during the years in question was not taxable to petitioner. Respondent admits that such a holding makes unnecessary other questions involving the statute of limitations and additions to tax.

*Decision will be entered for the petitioner.*