C.A. SIMPSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Simpson v. Commissioner
Docket No. 4120-72.
United States Tax Court
T.C. Memo 1976-160; 1976 Tax Ct. Memo LEXIS 239; 35 T.C.M. (CCH) 710; T.C.M. (RIA) 760160; May 24, 1976, Filed *239 Legal title to apartment house property was held by a corporation of which petitioner was sole stockholder. Corporation sold the property for cash, assumption of mortgage, and a purchase money note. The Corporation was immediately liquidated under sec. 337, I.R.C. 1954, and the cash and note were distributed to petitioner. Held, the corporation was a viable entity and cannot be ignored for tax purposes. It was the seller of the real estate. Held,further: The fair market value of the purchase money note received by petitioner on liquidation must be included in the amount petitioner received for her stock upon liquidation and she did not meet the requirements of sec. 453(b) (2) (A) (ii), I.R.C. 1954, for reporting her gain on the installment method. The note was not an "[evidence] of indebtedness of the purchaser" of her stock. Lee H. Henkel, Jr., and L.A. Weisensee, for the petitioner. Maurice W. Gerard, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency in petitioner's income tax for 1967 in the amount of $40,321.44. At issue is the amount of gain petitioner must report for tax purposes for 1967 incident to *240 the sale in that year by her wholly owned corporation of an apartment house, followed by the liquidation of the corporation. Petitioner reported as long-term capital gain on the installment method the amount of cash she received in 1967. Respondent determined that the sale was made by the corporation, that the proceeds of the sale distributed to petitioner in complete liquidation of the corporation, including the face amount of the purchaser's purchase money note, were taxable to petitioner in 1967 as long-term capital gain from liquidation, and that since the amount received by petitioner in 1967 exceeded 30 percent of the liquidation proceeds, petitioner could not report the gain on the installment method under section 453, I.R.C. 1954. [1] Resolution of the issue depends on whether the corporation can be ignored and the transaction treated as a sale of the apartment house directly from petitioner to the purchaser so the purchase money note can qualify as an evidence of indebtedness of the purchaser under section 453(b) (2) (A) (ii). A subsidiary issue will be considered, being petitioner's *241 basis in the stock of the corporation or the apartment house property for purposes of computing gain. [2]
FINDINGS OF FACT Petitioner, Mrs. C.A. Simpson, is a single individual who at all times material herein resided in Atlanta, Ga. Petitioner filed her individual income tax return for the taxable year ended December 31, 1967, with the Internal Revenue Service Center, Chamblee, Ga.
Monteleone Apartments, Inc. (sometimes hereinafter referred to as Monteleone) was incorporated *242 under the laws of Georgia in March 1963. From its inception until its dissolution, petitioner was the president and sole shareholder of Monteleone. Sometime prior to 1963, petitioner decided to undertake the construction and operation of an apartment building, intending thereby to provide herself with a secure source of income. Accordingly, in 1963, real estate was acquired in the name of Monteleone Apartments, Inc., and construction commenced thereon. The project took approximately a year to complete. In order to finance construction of the apartment building, Monteleone obtained from the Citizens Bank of Alpharetta a $270,000 construction loan which was subsequently paid off and replaced by a "permanent" loan from the Liberty Life Insurance Co., Greenville, S.C.[2] *243 In addition, petitioner expended a substantial amount of her personal funds in the construction of the apartment building. [3] Petitioner was actively involved in overseeing the various facets of the construction phase. Upon completion of the apartment building, petitioner moved into one of the rental units and supervised the day-to-day operation of the apartment building in addition to collecting rents and performing much of the repair and maintenance work. As characterized by petitioner, the management of the apartments was essentially "* * * a one-woman operation." Petitioner and Monteleone maintained one checking account with the Bank of Georgia which served both as petitioner's personal checking account and as Monteleone's corporate checking account; petitioner did not segregate items of Monteleone receipts or expenses from those incurred in her individual capacity. All rental payments which petitioner collected from tenants were deposited into this single account, and Monteleone's expenses (i.e., gas, electricity, water, insurance, taxes, etc.), were paid by checks drawn on the account. No books *244 and records were kept for Monteleone other than the Bank of Georgia account checkbook, deposit slips, and actual checks, all of which material petitioner turned over to a certified public accounting firm (hereinafter referred to as petitioner's accountants) for the preparation of Monteleone's corporate income tax returns filed for each of its fiscal years 1964 though 1968, inclusive, as well as petitioner's individual returns, including that filed for 1967, the year in issue. Monteleone's U.S. Corporation Income Tax Return filed for its initial taxable year (May 27, 1963 to March 31, 1964) indicates total gross income of $6,126.34, composed entirely of rental income. The total $12,777.42 of deductions claimed was comprised of: Taxes ($1,359.02); interest (to the Citizens Bank of Alpharetta and the Liberty Life Insurance Co. in the respective amounts of $5,661.46 and $224.91); depreciation (on apartments and swimming pool in the respective amounts of ($1,768.39 and $143.12); and other miscellaneous deductions ($3,620.52). Attached to the return is the following balance sheet for Monteleone: Beginning
End of Assets
of Taxable Year
Taxable Year
Cash
$ 0
$ 19,409.44
Fixed Assets: Buildings
$ 0
$282,942.87
Retaining Wall
0
12,552.00
Swimming Pool
0
5,725.00
Landscaping
0
87.87
$ 0
$301,307.74
Less: Depreciation Reserve
0
0
1,911.51
299,396.23
Real Estate
21,100.00
25,189.50
Other Assets: Cost of Securing Loan
$ 0
$ 2,688.75
Organization Expense
0
214.96
Escrow Account
0
1,215.30
4,119.01
Deferred Items: Prepaid Insurance
0
765.42
TOTALS
$21,100.00
$348,879.60
Liabilities
Accounts Payable
$ 0
$ 14,525.48
Notes Payable
12,100.00
12,100.00
Mortgages Payable
0
270,000.00
Other Liabilities: Due to Officer [4]
$ 0
$ 47,188.68
Deposits
0
0
2,167.50
49,356.18
Accruals: Taxes
0
549.02
Capital Stock
9,000.00
9,000.00
Surplus
0
(6,651.08)
TOTALS
$21,100.00
$348,879.60
*245 For its taxable years thereafter, Monteleone filed corporate income tax returns and paid taxes as reported thereon as follows: FYE
Tax Mar. 31,
Paid
1965
$3,368.51
1966
2,938.49
1967
2,802.87
1968
1,313.31 As reported in each of the respective returns, Monteleone's gross income consisted of the following amounts of rental and nonrental income: FYE Mar. 31,
Rental income
Nonrental
1965
$60,100.41
1966
62,964.00
$ 5.00
1967
66,955.84
832.25
1968
32,560.65
1,900.17 All of Monteleone's U.S. Corporation Income Tax Returns filed for the fiscal years 1964 through 1968, inclusive, were prepared by petitioner's accountants and signed by petitioner as president of Monteleone. Shortly after the completion of the apartment building, petitioner was approached by individuals interested in purchasing the property; petitioner declined their initial offers. Sometime prior to September 1967, petitioner discussed with her accountant the possibility of a sale of the apartment property and indicated *246 to him that any such sale should be arranged so that the sale proceeds would be received in installments sufficient to pay the tax resulting therefrom but that the tax would not be payable all at once.It was petitioner's understanding that the ensuing course of action was designed to accomplish these expressed purposes.
On September 20, 1967, a specially called meeting of the stockholders and directors of Monteleone was held, minutes of which meeting provide in pertinent part: * * *
Present were Mrs. C.A. Simpson, owner of all of the capital stock, and Robert L. Bowling, Secretary and Treasurer of the corporation, each of whom consented to the time, place and purpose of the meeting, waiving notice thereof by their signature appearing on these minutes. Mrs. Simpson explained that the purpose was to consider the discontinuance of the business by sale of the assets, paying the debts, transferring the remaining assets to the stockholder, and surrender of the corporate charter. The following plan of liquidation was adopted unanimously: WHEREAS, it is deemed expedient to discontinue operations, the directors and officers are hereby authorized to: (1) Begin negotiations immediately to convert *247 all possible assets into cash by sale thereof at the best price obtainable in their judgment; (2) Pay all liabilities known to exist; (3) File necessary forms to notify Internal Revenue Service of this plan of liquidation including Form 966, 1096, 1099, a certified copy of this plan, final income tax returns, etc., and to file the necessary forms with the State of Georgia, Income Tax Unit. (4) To retain $1,000.00 as a reserve for unknown liabilities and to pay all other net assets to the stockholders as a liquidating dividend. Such payments to be made as soon as practical, but in any even within twelve months from this date, it being the intention to comply with Section 337 of the United States Internal Revenue Code; (5) After consummation of each of the above steps and payment of then remaining cash to stockholder to surrender the charter by petition to the Superior Court of Fulton County, Georgia. * * *
Thereafter, Monteleone sold the apartment building to Rubin Pichulik and Karl Dziewienski (hereinafter collectively referred to as the purchasers) as evidenced by the sale closing statement dated September 29, 1967, designating Monteleone Apartments, Inc., as seller and subscribed *248 to by petitioner as president of Monteleone Apartments, Inc. The total selling price, $485,000, included consideration in the form of cash, assumption by the purchasers of Monteleone's outstanding mortgage indebtedness in the amount of $312,715.35, and a purchase money note executed by the purchasers in the amount of $119,500. According to the closing statement Monteleone had been paid earnest money in the amount of $5,000 and was to receive a balance, after deducting certain expenses, of $43,795.82 in cash. Monteleone filed with the Internal Revenue Service a Form 966 (Return of Information to be Filed by Corporations within 30 Days after Adoption of Resolution or Plan of Dissolution, or Complete or Partial Liquidation) dated October 18, 1967, and signed by petitioner as president. To its U.S. Corporation Income Tax Return (captioned "FINAL RETURN") for the taxable year April 1, 1967 - March 31, 1968, Monteleone attached a schedule which in pertinent part reflects the sale transaction as follows: SALE OF ASSETS (MEMO ONLY): Liquidation under Sec. 6043: Sale of Land, Buildings and
Furnishings - September 29, 1967
$485,000.00
Cost
$349,852.32
Depreciation
45,099.68
304,752.64
180,247.36
Less: Expense of Sale
195.75
NET GAIN
$180,051.61
*249 No part of the $180,051.61 net gain was included in gross income by Monteleone on its final return. The corporate balance sheet appended to Monteleone's return for fiscal 1968 indicates the following: Beginning
End ASSETS
of Year
of Year
Cash
$ 63,628.83
$1,627.50
Due from Officer
12,467.33
Depreciable Assets
$322,636.66
Less: Depreciation
38,638.33
283,998.33
Real Estate
25,189.50
Other Assets: Cost of Securing Loan
$ 2,283.75
Organization Expense
83.80
Escrow Account
1,215.30
3,582.85
TOTALS
$388,866.84
$1,627.50
LIABILITIES
Accounts Payable
$ 789.50
Notes Payable
12,100.00
Mortgage Payable
316,038.99
Deposits
5,236.28
Accruals: Taxes
$ 5,403.39
$1,627.50
Salaries
8,000.00
13,403.39
Capital Stock
9,000.00
Surplus
32,298.68
TOTALS
$388,866.84
$1,627.50
On the U.S. individual income tax return which petitioner filed for the taxable year ended December 31, 1967, petitioner reported on schedule D thereof (Gains and Losses From Sales or Exchanges of Property) total net long-term gain of $59,867.93 which was computed as follows: SCHEDULE SUPPORTING 1967 INCOME TAX RETURN
CAPITAL GAIN
Installment Sale in 1965: [5]
Sale
$ 90,000.00
NET PROFIT
$ 40,677.60
Percent of Profit
45.19733
Received in 1967-$11,949.04
X 45.19733
$ 5,400.65 [5]
Liquidation of Monteleone Apartments
Inc.: Total to be distributed
$224,751.21
Cost of Stock
9,000.00
$215,751.21
Less: Installment Sale in
Liquidation
180,051.61
35,699.60
Sale of Assets in [Monteleone]
Apartments, Inc.: Gross Price
$485,000.00
Net Costs
304,948.39
PROFIT
$180,051.61
Percent of Profit
37.124
Received in 1967-$50,551.61
X 37.124
18,767.68
TOTAL CAPITAL GAIN
$ 59,867.93
*250 In the statutory notice issued to petitioner on December 17, 1971, respondent determined a deficiency in petitioner's 1967 income tax in the amount of $40,321.44 derived from respondent's recomputation of the gain realized by petitioner upon the distribution in liquidation made by Monteleone: Correct amount of distribution
$218,423.33
Less: Cost of Monteleone stock
$9,000.00
Additional income tax
liability of Monteleone
for the taxable year
ended March 31, 1968 [6] *251 4,274.57
13,274.57
Correct long-term capital
gain realized, as determined
$205,148.76 OPINION Monteleone Apartments, Inc., a corporation wholly owned by petitioner and which she served as president, held title to land and an apartment building constructed thereon which constituted the principal assets of and source of income to Monteleone. In 1967, the land, apartment building, and certain other related property were sold. In order to determine the amount of gain to be reported by petitioner incident to the sale transaction, we must decide whether Monteleone may be disregarded as a separate taxable entity such that petitioner, as seller of the property, is entitled to report gain from the sale according to the installment method of section 453, and if the transaction is instead characterized as a sale and liquidation by Monteleone pursuant to section 337, whether petitioner's basis in the Monteleone stock should be increased to reflect the expenditure of petitioner's personal funds in the construction of the apartment building. As to the first question, petitioner in essence contends that Monteleone should not be recognized for tax purposes as a separate entity because petitioner considered the property to be her own, acted in accordance *252 with that belief, and intended to accomplish the sale of the property so as to avail herself of the benefit of installment reporting. In support of her position, petitioner further asserts on brief that the usual indicia of corporate viability are absent from the instant case. Emphasizing the facts that Monteleone maintained no separate books and records, had no employees, held no regular meetings of shareholders and/or officers, petitioner would conclude thereby that Monteleone, as a mere nominee and titleholder, engaged in no activities sufficient to warrant its separate recognition for tax purposes. In general, petitioner urges that the character of the sale transaction in issue should not depend on purely formalistic distinctions but rather reflect the substance of the transaction as evidenced by petitioner's treatment of the sale. Respondent, on the other hand, maintains that Monteleone was a viable corporate entity whose identity cannot be disregarded. Viewing the transaction as a sale of the apartment assets by Monteleone followed by a liquidating distribution of the proceeds to petitioner, respondent concludes that petitioner is not entitled to report the liquidation gain *253 on the installment method because the installment note given by Pichulik and Dziewienski does not, in petitioner's hands as a transferee of Monteleone, constitute an "[evidence] of indebtedness of the purchaser" within the meaning of section 453 but rather represents a payment in the year of sale in excess of the amount allowable for qualification under section 453; accordingly, respondent contends that petitioner must fully report her liquidation gain in 1967. We agree. Our conclusion as to the viability for tax purposes of Monteleone is predicated upon the principles set forth in Moline Properties v. Commissioner,319 U.S. 436 (1943), wherein the Supreme Court stated at pp. 438-439: The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. * * * [Fn. refs. omitted.] Thus, given either *254 of the alternative requisites of business purpose or business activities, the corporate entity will be accorded recognition. Jackson v. Commissioner,233 F. 2d 289 (2nd Cir. 1956), affg. 24 T.C. 1 (1955). As to the latter requirement, the quantum of activity prescribed may indeed be minimal. Britt v. United States,431 F. 2d 227, 237 (5th Cir. 1970). In Paymer v. Commissioner,150 F. 2d 334 (2nd Cir. 1945), two brothers who had previously conducted their real estate operations in the form of a partnership formed two corporations (Raymep and Westrich) to which they transferred title to certain real estate so as to preclude attachment thereof by creditors of the partnership. It was expressly provided that the corporations were only to hold title and that beneficial interest therein remained with the two brothers (each a 50-percent shareholder). Neither Raymep nor Westrich held corporate meetings, maintained an office or bank account, or collected income; the brothers continued to manage the property as before, collecting the income and paying the expenses attributable thereto. Under these circumstances the court concluded that Westrich was a mere dummy and properly disregarded *255 as a separate entity but as to Raymep which had, in 1938, received a $50,000 loan, the court found that Raymep was sufficiently active to justify its holding that Raymep did engage in business in that year. Applying those principles to the instant case, the fact that Monteleone held title to the apartment property and received the respective loans from the Citizens Bank of Alpharetta and the Liberty Life Insurance Co. would, afortiori, warrant recognition of Monteleone's corporate identity. See William B. Strong,66 T.C. 12 (1976). However, we also note that Monteleone filed corporate income tax returns and reported thereon income and deductions attributable to the apartment property. We consider this to be additional evidence that Monteleone was treated as a viable entity for tax purposes. [7] *256 Cf. David Rosen,62 T.C. 11 (1974), affd. 515 F.2d 506 (3rd Cir. 1975). We cannot give much weight to the factors emphasized by petitioner, such as the absence of corporate books and records, the failure to hold regular corporate meetings, etc. See Paymer v. Commissioner,supra; Estate of L. B. Whitfield,14 T.C. 776 (1950), affd. 192 F. 2d 494 (5th Cir. 1951). Moreover, the instant case does not fall within any of the established exceptions to the general rule favoring recognition of the corporate entity. Notwithstanding petitioner's reliance thereon, Monteleone was not a bare titleholder as in John A. Mulligan,16 T.C. 1489 (1951), where the corporation in controversy was formed to facilitate administration of an estate, nor can Monteleone properly be compared to the corporation in Minnesota Farm Bureau Securities, Inc. v. United States, 10 AFTR 2d par. 62-5289, 63-1 U.S.T.C. par. 9138 (Minn. 1962), where, in directing a verdict in favor of the plaintiff corporation, the court found that the initial fund-raising activities undertaken by the plaintiff to launch its parent corporation into business were insufficient to establish its subsequent taxability as a separate entity. Additionally, there is no basis upon which to characterize Monteleone as agent of petitioner. See National Carbide Corp. v. Commissioner,336 U.S. 422 (1949). *257 We believe Stewart Forshay,20 B.T.A. 537 (1930), cited by petitioner, is clearly distinguishable from the instant case since in that case, sale proceeds and rental income from certain real property transferred to a corporation owned by the taxpayer and three other individuals were held to be income to the four individuals, not the corporation, because the corporation did not have legal or equitable title to the property under the applicable New York law. Similarly, petitioner's reference to Lloyd F. Noonan,52 T.C. 907 (1969), affd. per curiam 451 F. 2d 992 (9th Cir. 1971) is inapposite. The Noonan case involved the use of four corporations as limited partners as an income-splitting device; Monteleone served no such avoidance purpose herein. On the basis of the foregoing, we find that Monteleone was a viable corporate entity whose existence must be respected for tax purposes. Thus, as manifest by the minutes of the meeting of September 20, 1967, the sale closing statement and the Form 966 in evidence, Monteleone sold the apartment property and related assets and subsequently liquidated in accordance with the provisions of section 337. [8] *258 We next consider the applicability of section 453 to the liquidating distribution which, under the general rule of section 331(a), is treated as a payment in exchange for petitioner's stock in Monteleone. In pertinent part, section 453 provides as follows: SEC. 453. INSTALLMENT METHOD. * * *
(b) Sales of Realty and Casual Sales of Personalty.-- (1) General Rule.--Income from-- (A) a sale or other disposition of real property, or (B) a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year) for a price exceeding $1,000, may (under regulations prescribed by the Secretary *259 or his delegate) be returned on the basis and in the manner prescribed in subsection (a). (2) Limitation.--Paragraph (1) shall apply-- (A) In the case of a sale or other disposition during a taxable year beginning after December 31, 1953 (whether or not such taxable year ends after the date of enactment of this title), only if in the taxable year of the sale or other disposition-- (i) there are no payments, or (ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 per cent of the selling price. * * *
(3) Purchaser Evidences of Indebtedness Payable on Demand or Readily Tradable.--In applying this subsection, a bond or other evidence of indebtedness which is payable on demand, or which is issued by a corporation or a government or political subdivision or a government or political subdivision thereof (A) with interest coupons attached or in registered form (other than one in registered form which the taxpayer establishes will not be readily tradable in an established securities market), or (B) in any other form designed to render such bond or other evidence of indebtedness readily tradable in an established securities market, shall not be treated *260 as an evidence of indebtedness of the purchaser. In the context of the instant case, the crucial provision is that of subsection (b)(2)(A)(ii) requiring that the payments received by petitioner in 1967 not exceed 30 percent of the amount distributed. Applying the explicit language of the statute, the $119,500 installment note given by Pichulik and Dziewienski does not constitute "[evidence] of indebtedness of the purchaser," that is, the note was not "[evidence] of indebtedness" of Monteleone, but was instead a third-party note which must be considered as part of the payments received by petitioner in 1967. This conclusion is required by such cases as Freeman v. Commissioner,303 F.2d 580 (8th Cir. 1962), affg. 36 T.C. 779 (1961), which is directly in point; Carl F. Holmes,55 T.C. 53 (1970); J. W. Elmore,15 B.T.A. 1210 (1929); Caldwell v. United States,114 F.2d 995 (3rd Cir. 1940). We have no evidence that the fair market value of the note is less than its face value and since the face value of the note itself exceeds 30 percent of the total distribution (using either the amount of $218,423.33 as determined by respondent or $225,751.21 as reported by petitioner on her 1967 return), *261 petitioner fails to qualify under section 453 and must accordingly recognize the entire liquidation gain in 1967. Lastly, in order to ascertain the amount of such liquidation gain to be reported by petitioner, we must determine whether petitioner's basis in the Monteleone stock should be increased, as petitioner contends, to reflect the contribution of her personal funds toward the construction of the apartment building. Accepting petitioner's testimony that she had substantial funds on hand prior to commencement of the construction and that she used some of these funds for construction, and recognizing that, as reflected on Monteleone's corporate balance sheets, the cost of the land and building exceeded the loan proceeds and initial rental receipts, we are not persuaded that petitioner is entitled to increase her stock basis accordingly. Assuming, arguendo, that petitioner did expend some of her own funds, it does not necessarily follow that such expenditures constituted contributions to capital. In fact, it would appear that any advances petitioner made were treated as loans. The list of checks drawn on the Bank of Georgia submitted by petitioner indicates that checks totaling *262 approximately $60,000 were drawn on the account up to March 31, 1964. The balance sheet attached to Monteleone's corporate income tax return as of March 31, 1964, includes cash on hand of $19,409.44 and fixed assets costing $301,307.74, or a total of about $320,000. The balance sheet also includes a mortgage liability in the amount of $270,000 and liabilities to officer in the amount of $49,356.18. These liabilities would have funded the assets mentioned above. Since petitioner was the only investing officer of the corporation, we can assume the $49,356.18 liability was owed to petitioner. The balance sheet as of March 31, 1967, attached to the corporate return for fiscal 1967 indicates that the liability to officers had been completely liquidated. In addition an unexplained note payable in the amount of $12,100 was apparently paid off in the liquidation. The corporate tax returns consistently reported the amount of capital stock as $9,000, which, plus an adjustment for Monteleone's taxes, is the amount respondent used as petitioner's basis in her stock in computing her gain on liquidation.We have no reason to believe that the balance sheets attached to the corporate returns, *263 which were contemporaneously prepared by a certified public accounting firm from data presented to them by petitioner, would not correctly reflect the corporation's capital structure. We therefore believe that any amounts advanced by petitioner for construction of the apartment house were treated as loans to the corporation which were repaid to petitioner prior to the liquidation. In any event petitioner, who had the burden of proof, has failed to prove that her basis in the stock was any greater than the amount reflected on the corporate and her own tax returns. Consequently, we conclude that petitioner's basis in her stock was $9,000 as reported by petitioner on her 1967 return, plus the $4,274.57 adjustment determined by respondent (see findings of fact). We note in closing that it is unfortunate that the particular procedures adopted did not produce the results expressly intended by petitioner. [9] But as the court in Freeman v. Commissioner,supra, acknowledged at pp. 584-585: It is quite true that in matters of tax liability, as in other fields, substance is generally to be preferred to form. But it is not correct to say that the form which a transaction takes is unimportant *264 from the standpoint of tax liability. Indeed, in many instances, the form of a transaction is determinative of tax consequences. If a taxpayer having a choice of methods of accomplishing an economic or business result pursues a particular means to accomplish his ends, he must abide the tax consequences resulting from his choice of methods, even though had he made another choice the tax consequences would have been less severe or even nonexistent. * * * [Cits. omitted.] Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. The only issue raised in the amended petition filed and signed by petitioner was the right to report on the installment basis. Sometime after the amended petition was filed an entry of appearance to represent petitioner was filed by an attorney. Trial of the case was continued several times to give the attorney time to prepare the case for trial. Sometime prior to trial the attorney withdrew from the case and petitioner presented her case at trial pro se. For this reason the Court permitted petitioner to orally amend her petition at trial to raise the issues of petitioner's basis and the nonviability of the corporation. Present counsel entered the case after the case was tried and did not participate in the trial.↩
2. These loans are listed as "mortgage liability" on the corporate balance sheet accompanying Monteleone's Federal corporate income tax return for each of the fiscal years 1964 through 1968. The record does not indicate whether petitioner incurred any personal liability on the mortgage notes. 3. The only evidence of this is petitioner's testimony and a list of checks drawn on an account at the Bank of Georgia, hereinafter described, which petitioner testified were used for construction purposes.↩
4. By March 31, 1965, the "liability due officer" was reduced to $16,621.40 and further reduced to $4,729.78 by March 31, 1966. This liability appears as $0 on the balance sheet accompanying the corporate return for fiscal 1967.↩
5. This $5,400.65 attributable to a prior installment sale has no bearing on the issues herein except to the extent necessary to the computation of petitioner's correct taxable income and tax liability for 1967.↩
6. In addition to the statutory notice issued to petitioner, respondent also issued a statutory notice to Monteleone and a statutory notice to petitioner as transferee of Monteleone, in each of which notices respondent determined a deficiency of $4,274.57 in Monteleone's income tax liability for the taxable year ended March 31, 1968. The deficiency (attributable to unreported gain realized from the sale of section 1245 property) was conceded by petitioner prior to trial in the instant case.
7. We note also that petitioner's concession as to the deficiency in Monteleone's tax liability attributable to sec. 1245 recapture gain (see fn. 6, supra↩) does not comport with her asserted disregard of Monteleone's existence as a separate taxable entity.
8. SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS. (a) General Rule.--If-- (1) a corporation adopts a plan of complete, liquidation on or after June 22, 1954, and (2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.↩
9. It is doubtful that petitioner could accomplish her objective by a sale of the real estate itself. Had she liquidated the corporation first and then sold the real estate herself, it is likely that her gain would be realized on the liquidation rather than the sale.↩