C. EDWIN RYMER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rymer v. Commissioner
Docket No. 16750-80.
United States Tax Court
T.C. Memo 1986-534; 1986 Tax Ct. Memo LEXIS 74; 52 T.C.M. (CCH) 964; T.C.M. (RIA) 86534; November 4, 1986. *74 Petitioner, while working as an apartment building manager, bought an apartment building as a personal investment. Later, he lost his job and attempted to sell the apartment building. A potential buyer indicated interest in the building if petitioner could offer an adjacent parcel of land for sale along with the apartment building. Petitioner then acquired the adjacent parcel of land and sold it together with the apartment building to the purchaser for a single sale price. Held: (1) Petitioner did not hold the apartment building primarily for sale in the ordinary course of his trade or business; petitioner's gain from the sale was long-term capital gain. (2) Petitioner failed to show that any of his gain is allocable to the adjacent parcel rather than to the apartment house. C. Edwin Rymer, pro se. Ben G. Reeves, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioner for 1976 in the amount of $6,177.43. After concessions by both parties, the issues for decision [1] are as follows: (1) Whether petitioner held real property primarily for sale to customers in the ordinary *75 course of his trade or business, so that the gain from the sale of this property is ordinary income, rather than capital gain giving rise to a long-term capital gain deduction under section 1202; [2] and (2) If the gain is capital gain, then what portion of the amount realized is properly allocable to real property held for not more than 6 months and sold for a single sale price with other property held for more than 6 months. FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, petitioner was a legal resident of Tallahassee, Florida. Petitioner worked for a land development *76 corporation for the first half of 1974. In mid-1974, he was chosen to manage about six to nine apartment complexes, containing about 2,000 apartment units in the Florida "panhandle". In October 1974, petitioner acquired, as an investment, real property known as the Miccosukee Arma Apartments (hereinafter sometimes referred to as "M.A. Apartments"). This purchase was not related to petitioner's property management employment. Petitioner paid $380,000 for M.A. Apartments. From the date of acquisition through the date of sale, petitioner operated M.A. Apartments as an apartment building. Petitioner also owned and operated two other apartment complexes. In 1976 petitioner was in the trade or business of managing M.A. Apartments and other rental property. In late 1975, petitioner lost his job as property manager. Because he lost his job, petitioner began actively attempting to sell M. A. Apartments in early 1976. In mid-February 1976, petitioner was approached by an agent for a potential buyer of M.A. Apartments. The agent told petitioner that the potential buyer would be more interested in buying M.A. Apartments if petitioner could also offer about one-half acre of land lying to *77 the west of M.A. Apartments and contiguous thereto (hereinafter sometimes referred to as "the adjacent parcel"). [3]
As a result of this meeting, petitioner bought the adjacent parcel on March 1, 1976, solely to facilitate a sale of M.A. Apartments. Petitioner's basis in the adjacent parcel when he sold it was his cost of $26,076.75. On March 28, 1976, petitioner received a $470,891 offer from the buyer for M.A. Apartments and the adjacent parcel. As a result of this offer, petitioner sold M.A. Apartments and the adjacent parcel as one combined parcel on April 16, 1976. [4] *78 Petitioner did not sell any other real property in 1975, 1976, and 1977. On petitioner's 1976 tax return, he reported the sale on Schedule D as the sale of a capital asset held more than 6 months. Petitioner also reported the sale on Form 4797 as the sale of property used in a trade or business but did not carry the gain reported on that form *79 forward to Schedule D. In the notice of deficiency, respondent did not contest the manner in which the gain was reported, the amount of the gain, nor the nature of the gain as long-term capital gain. Petitioner was otherwise unemployed during 1976 and the major portion of his receipts for the year arose through the sale of M.A. Apartments and the adjacent parcel. Petitioner did not make any capital improvement to M.A. Apartments. * * * Petitioner used M.A. Apartments in his trade or business. Petitioner did not use the adjacent parcel in his trade or business. In 1976, when petitioner sold M.A. Apartments and the adjacent parcel, he did not hold M.A. Apartments and the adjacent parcel primarily for sale to customers in the ordinary course of his trade or business. OPINION I. CAPITAL ASSET
Petitioner contends that although he acquired M.A. Apartments as a personal investment, the nature of his holding of the property later changed to property that he held primarily for sale to customers in the ordinary course of his trade or business. [5] *81 As a result of this change in the nature of petitioner's holding of the property, the property ceased to be a capital asset; consequently, all gain *80 from its sale is ordinary income. Respondent maintains that M.A. Apartments remained a capital asset in petitioner's hands through the date of sale and, consequently, the gain is capital gain. We agree with respondent's conclusion. Section 1221 defines "capital asset" to mean "property held by the taxpayer (whether or not connected with his trade or business), but does not include -- * * * (2) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or real property used in his trade or business." [6] Since petitioner was engaged in the trade or business of managing M.A. Apartments and other rental property in 1976, M.A. Apartments was used in his trade or business. *82 M.A. Apartments was subject to the allowance for depreciation provided in section 167 and petitioner claimed, and respondent allowed, depreciation deductions for the years petitioner held the property. The land upon which the apartment buildings stood was likewise used in petitioner's trade or business. Consequently, M.A. Apartments was not a capital asset when petitioner sold the properties. Section 1221(2). However, section 1231(a)[7] *84 provides long-term capital gain treatment to the extent gains exceed losses from sales or exchanges of "property used in the trade or business." Petitioner did not have any section 1231 losses. Therefore, to the extent M.A. Apartments is an asset to which section 1231 applies, petitioner's *83 gain on the sale of M.A. Apartments will be treated as long-term capital gain. Section 1231(b)(1)[8] *85 provides that, for purposes of section 1231, "property used in the trade or business" does not include "(B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." Petitioner has the burden of proving that the properties were not eligible for capital gain treatment as respondent asserts and as petitioner reported on his 1976 tax return. Rule 142(a). However, the capital gain provisions, being an exception from the normal tax rates, are to be construed narrowly. Commissioner v. P.G. Lake, Inc.,356 U.S. 260, 265 (1958); Corn Products Co. v. Commissioner,350 U.S. 46, 52 (1955). The fact that a narrow construction of the capital gain provisions may be favorable to petitioner in the instant case (see n. 5, supra) does not change the analysis. In construing the capital gain provisions, the Supreme Court concluded in Malat v. Riddell,383 U.S. 569, 572 (1966), as follows: The purpose of the statutory provision with which we deal is to differentiate between the "profits and losses arising from the everyday operation of a business" on the one hand * * * and "the realization of appreciation in value accrued over a substantial period of time" on the other. * * * A literal reading of the statute is consistent with this legislative purpose. We hold that, as used in section 1221(1), [9] *86 "primarily" means "of first importance" or "principally." [Citations omitted.] Whether the income at issue arose from the operation of a trade or business or from investment is a question of fact. [10] *87 Daugherty v. Commissioner,78 T.C. 623, 628 (1982); Bauschard v. Commissioner,31 T.C. 910, 915 (1959), affd. 279 F.2d 115, 117 (CA6 1960). The purpose of our inquiry is to determine whether the property was held primarily for sale to customers in the ordinary course of petitioner's trade or business at the time of sale. In making this determination, we must consider not only whether petitioner held the property primarily for sale to customers, but also whether the property was for sale in the ordinary course of petitioner's trade or business. Buono v. Commissioner,74 T.C. 187, 199-200 (1980); Howell v. Commissioner,57 T.C. 546, 555 (1972), and cases cited therein. Although petitioner's purpose in acquiring the property is to be considered, that purpose is subject to change. Pointer v. Commissioner,48 T.C. 906, 916 (1967), affd. 419 F.2d 213 (CA9 1969); Bauschard v. Commissioner, 31 T.C. at 917, 279 F.2d at 118. The factors to be considered include (1) the nature and purpose of the acquisition of the property and the duration of the ownership; (2) the extent and nature of the taxpayer's efforts to sell the property; (3) the number, extent, continuity, and substantiality of the sales; (4) the extent of subdividing, developing, and advertising to increase sales; (5) the use of a business office for the sale of the property; (6) the character and degree of supervision or control exercised by the taxpayer over any representative selling the property; and (7) the time and effort the taxpayer habitually devoted to the sales. Major Realty Corp. And Subsidiaries v. Commissioner,749 F.2d 1483, 1488 (CA11 1985), affg. and revg. on another issue a Memorandum Opinion of this Court; [11]Daugherty v.Commissioner,78 T.C. at 629; Howell v. Commissioner,57 T.C. at 554. Other factors are often considered when they may be of aid in resolving the issue. The *88 relative amounts of income from the taxpayer's regular business and from the property transaction can be significant in certain cases. Real Estate Corporation v. Commissioner,35 T.C. 610 (1961), affd. 301 F.2d 423 (CA10 1962). The foregoing considerations have no independent significance; they are merely factors to help us decide, on the basis of the record as a whole, whether petitioner held M.A. Apartments primarily for sale to customers in the ordinary course of his trade or business in 1976. United States v. Winthrop,417 F.2d 905, 910 (CA5 1969); Bauschard v. Commissioner, 279 F.2d at 118; Daugherty v. Commissioner,78 T.C. at 629. On the record in the instant case, the most convincing element is that, although petitioner owned and operated three apartment complexes in 1976, he sold only one piece of real property in the period 1975 through 1977. Petitioner acquired M.A. Apartments as an investment. He used M.A. Apartments in his trade or business of owning and operating apartment complexes. Nothing in the record in the instant case suggests that sales of real property was at any time a part of the ordinary course of petitioner's trade or business. *89 Petitioner concededly acquired M.A. Apartments as a "personal investment". We gather, from petitioner's description of what he did with M.A. Apartments and the other two apartment complexes that he owned and managed, that his purpose was to profit from a hoped-for excess of current income over costs.Of course, a taxpayer's primary purpose may change, but petitioner's original purpose was not primarily to hold M.A. Apartments for sale to customers in the ordinary course of his trade or business. Petitioner sold M.A. Apartments in one sale; there is no evidence that he subdivided the property. The only meaningful activity that he engaged in with respect to effectuating the sale was his acquisition of the adjacent parcel. This is not sufficient to raise his selling activities to the level of a trade or business, or to cause the sale to be treated as part of the ordinary course of his trade or business. See Buono v. Commissioner,supra.
As to the other listed factors, there is little or no meaningful evidence in the record in the instant case. We conclude that M.A. Apartments and the adjacent parcel were not held by petitioner primarily for sale to customers in the ordinary course of *90 his trade or business at the time of sale. On brief, petitioner cites Heebner v. Commissioner,280 F.2d 228 (CA3 1960), affg. 32 T.C. 1162 (1959), for the proposition that sale of a "package" gives rise to ordinary income. The facts in Heebner differ substantially from those in the instant case. Heebner was a professional building contractor. As a part of his contracting business, he occasionally purchased land, planned and constructed a building on the land to the intended buyer's specifications and then sold the "package" to the intended buyer. The Court of Appeals held (280 F.2d at 233): "There is absolutely no reason for treating the profit from the building transaction here any differently because one small aspect of it involved a sale of land. The land under this factual pattern was merely another commodity, such as lumber, steel and bricks, which went into the finished product * * *." Although most of Heebner's business did not consist of such arrangments, "he did not deny that he held himself out as a package builder. This was a going aspect of his business, and the Sharon Hill project was but a manifestation of it." 280 F.2d at 233. In contrast, petitioner purchased *91 M.A. Apartments for investment; he did not make any capital improvements to the property. The mere purchase of an adjoining piece of land as part of an effort to sell a single piece of investment property does not put petitioner into the trade or business of selling "package" deals. Petitioner also cites several cases for the proposition that property may change from investment property to property held for sale to customers in the ordinary course of taxpayer's trade or business. [12] *92 We do not dispute this proposition but merely hold that petitioner did not hold the properties primarily for sale to customers in the ordinary course of his trade or business at the time of sale. In the cited cases the taxpayers' activities were such that the sales were made on a regular, recurring basis and the taxpayers devoted substantial time and effort in making the sales.Petitioner made only one sale and has not shown this Court that substantial activity was involved in making this sale. We hold for respondent on this issue. II. ALLOCATION OF GAIN
Petitioner contends that if we conclude that the gain from the sale of M.A. Apartments and the adjacent parcel is to be taxed as capital gain, then a portion of the gain should be allocated to the adjacent parcel. Since petitioner held the adjacent parcel for less than 2 months, any gain allocated to the adjacent parcel would be short-term capital gain or ordinary income. Petitioner contends that the allocation of the sales price should be made by reference to "land cost, number of units, land area, total dollar costs, or a combination of all these factors." Respondent asserts that petitioner has failed to carry his burden of proving that any portion of the sale price in excess of petitioner's cost in the adjacent parcel should be allocated to the adjacent parcel. We agree *93 with respondent. On his tax return, petitioner reported his gain on the sale as long-term capital gain. Since it is clear that petitioner held the adjacent parcel less than 2 months, petitioner implicitly allocated all of the gain to M.A. Apartments. Stated another way, petitioner implicitly allocated to the adjacent parcel so much of the lump-sum sale price as equalled his cost for the adjacent parcel. Respondent did not disturb petitioner's original treatment of the transaction and continues to contend that the entire gain is long-term capital gain. In effect respondent has determined that petitioner made the correct allocation. Petitioner has the burden of proving that a portion of his gain on the sale is properly allocable to the adjacent parcel. Rule 142(a). Allocation of the amount received is to be made based on the fair market value of the properties sold as of the date of sale. Davock v. Commissioner,20 T.C. 1075, 1079 (1953). Petitioner has failed to produce any evidence of the relative fair market values of the properties sold as of the date of sale. Given the short period of time that the adjacent parcel was held, we do not believe petitioner has shown there is error *94 in allocating the sale price to the adjacent parcel to the extent of petitioner's cost and allocating the remainder of the sale price to M.A. Apartments. [13] We hold for respondent on this issue. [14] *95 In order to take account of respondent's concessions, Decision will be entered under Rule 155.
Footnotes
1. All issues arising from adjustments shown on the notice of deficiency have been settled by the parties. The issues for decision were not raised in the pleadings, but they were tried by consent, under Rule 41(b)(1). Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice & Procedure. ↩
2. Unless indicated otherwise, all section and subtitle references are to sections and subtitles of the Internal Revenue Code of 1954 as in effect for the year in issue.↩
3. M.A. Apartments consists of five buildings on 1.3269 acres. The adjacent parcel consists of 0.5180 acres.↩
4. On his 1976 tax return, petitioners showed the gross sales price as $455,411.44, the sum of the adjusted basis and cost of sale as $380,966.34, and the gain as $74,445.10. On opening brief, respondent asks us to find that the sales price was $455,411. Petitioner does not object to this requested finding on answering brief. Meanwhile, on opening brief, petitioner asks us to find the sales price to be the contract amount of $470,891. Respondent does not object to this requested finding on answering brief. On opening brief, respondent states that the total gain is $74,445.10, that this is to be reduced by $10,608.28 (sec. 1245 recapture) and $10,400 (discharge of indebtedness ordinary income), and that it is the remaining $53,436.82 whose status is in dispute. Petitioner agrees to these amounts. On answering brief, respondent proposes to increase the gain by the $15,479.56 difference between the two requested findings as to sale price. The difference between the two asserted sales price amounts may be explainable by reference to expenses of sale or other legitimate reductions in the amount of the ultimate gain; nevertheless we are unable to reconcile the two amounts by reference to the record and we remain puzzled over the discrepancy. If it affects the amount of the deficiency, then the parties are to resolve this matter in the computation under Rule 155.↩
5. This is an unusual case in that petitioner is asserting that the gain should be ordinary income, while respondent is arguing the gain should be long-term capital gain. In the usual case, the roles are reversed since taxpayers usually are benefitted by the deduction provided by section 1202. The record does not explain the reasons for this unusual situation. It is clear that if the gain were long-term capital gain then petitioner would incur tax liability under section 56 (the minimum tax for tax preferences), since one-half of the amount by which the net long-term capital gain exceeds the net short-term capital loss is an item of tax preference for 1976. Section 57(a)(9)(A). However, the record also indicates that if the gain were ordinary income, then petitioner's tax liability under section 1 would exceed the minimum tax liability that would result from the gain being ruled long-term capital gain. On brief, respondent contends that, if we hold for petitioner, then "there will be an increased deficiency. In accordance with the provisions of I.R.C. § 6214(a), the respondent makes a claim for this increased deficiency." Section 6214(a)↩ gives this Court jurisdiction to redetermine the deficiency, even if the amount so redetermined is greater than the amount determined in the notice of deficiency, "if claim therefor is asserted by the Secretary or his delegate at or before the hearing or a rehearing." Under the language of the statute, respondent's claim appears to be untimely. Nothing in the instant case leads us to conclude that respondent should be allowed to "up the ante" in a brief filed after the last hearing in the case.
6. Section 1221(2) provides as follows: SEC. 1221. CAPITAL ASSET DEFINED. For purposes of this subtitle [i.e., subtitle A, income taxes], the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include -- * * * (2) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 167↩, or real property used in his trade or business;
7. Section 1231(a) provides, in relevant part, as follows: SEC. 1231. PROPERTY USED IN THE TRADE OR BUSINESS AND INVOLUNTARY CONVERSIONS. (a) General Rule. -- If, during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business * * * into other property or money, exceed the recognized losses from such sales [or] exchanges, * * * such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. * * * [The subsequent amendments of this provision by secs. 1402(b)(1)(R) and 1402(b)(2) of the Tax Reform Act of 1976 (Pub. L. 94-455, 90 Stat. 1520, 1731, 1732), and by secs. 711(c)(2)(A)(iii) and 1001(b)(15) of the Deficit Reduction Act of 1984 (Pub. L. 98-369, 98 Stat. 494, 944, 1012), do not apply to the instant case.] ↩
8. Section 1231(b)(1) provides, in relevant part, as follows: SEC. 1231. PROPERTY USED IN THE TRADE OR BUSINESS AND INVOLUNTARY CONVERSIONS. * * * (b) Definition of Property Used in the Trade or Business. -- For purposes of this section -- (1) General Rule. -- The term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 167, held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not -- * * * (b) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, * * * [The subsequent amendments of this provision by secs. 1402(b)(1)(R) and 1402(b)(2) of the Tax Reform Act of 1976 (Pub. L. 94-455, 90 Stat. 1520, 1731, 1732), by sec. 701(ee) of the Revenue Act of 1978 (Pub. L. 95-600, 95 Stat. 2763, 2924), and by secs. 711 (c)(2)(A)(iii) and 1001(b)(15) of the Deficit Reduction Act of 1984 (Pub. L. 98-369, 98 Stat. 494, 944, 1012), do not apply to the instant case.]↩
9. The language of subparagraph (B) of section 1231(b)(1), which we consider in the instant case, is identical to the language of section 1221(1)construed in Malat v. Riddell,383 U.S. 569↩ (1966).
10. The Court of Appeals for the Eleventh Circuit, to which this case is appealable (sec. 7482(b)(1)(A)), has not yet ruled on this point. Sanders v. United States,740 F.2d 886, 888 (CA11 1984). See Byram v. United States,705 F.2d 1418, 1421↩ nn. 4 and 5 (CA5 1983), discussing the positions of the Courts of Appeals of several other circuits on this point.
11. T.C. Memo. 1981-361↩.
12. Bush v. Commissioner,610 F.2d 426 (CA6 1979), affg. T.C. Memo. 1977-75; Biedenharn Realty Co. v. United States,526 F.2d 409 (CA5 1976); Thompson v. Commissioner,322 F.2d 122 (CA5 1963), affg. on this issue 38 T.C. 153 (1962); McGah v. Commissioner,193 F.2d 662 (CA9 1952); Bynum v. Commissioner,46 T.C. 295 (1966); Estate of Dean v. Commissioner,T.C. Memo. 1975-137; Estate of Kirschenmann v. Commissioner,T.C. Memo. 1965-315; Freberg v. Commissioner,T.C. Memo. 1964-129; Mendoza v. Commissioner,T.C. Memo. 1963-115; Boomhower v. United States,74 F.Supp. 997↩ (N.D. Iowa 1947).
13. The adjacent parcel apparently was never used in petitioner's trade or business, and so is not excluded from the definition of capital asset by section 1221(2). The adjacent parcel appears to be sufficiently different from the property dealt with in S. & H., Inc. v. Commissioner,78 T.C. 234 (1982), so as to make the latter case distinguishable as to sections 1221(1) and 1231(b)(1)(B)↩. However, since we decide that petitioner has failed to carry his burden of proving that he should recognize any gain or loss on the sale of the adjacent parcel, we need not reach the issue as to whether any gain or loss would be capital gain or loss.
14. In Helvering v. Taylor,293 U.S. 507 (1935), the Supreme Court held that, if a taxpayer has shown that the Commissioner's allocation in a particular instance is incorrect, then we are not to decide the matter entirely for the Commissioner merely because the taxpayer has failed to show us the correct allocation.The instant case is like Taylor only insofar as both cases involve allocations. In the instant case, unlike Taylor, petitioner has failed to show that respondent's allocation is incorrect. Accordingly, our holding in the instant case is consistent with the Supreme Court's instructions in Taylor.↩